ALFRED J. SWEET, INC., APPELLANT

*vs.*

CITY OF AUBURN.

Androscoggin.     Opinion, August 29, 1935.

*Skelton & Mahon,* for plaintiff.
*Donald W. Webber,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J.    This case is before us on report from the Superior Court. It is an appeal to that court, authorized by R. S. 1930, Chap. 13, Secs. 76, 77, from a decision of the tax assessors of the City of Auburn refusing to grant an abatement to the petitioner on account of taxes assessed for the year 1933.

The petitioner on the date of the assessment was the owner of a piece of land lying between Minot Ave. and South Goff Street in Auburn. This measured 773 feet on Minot Ave. and 825 feet on South Goff Street. It varied in width from 159 feet at its southerly end to 225 feet at its northerly end, and contained 151,112 square feet. On this land was a large three-story brick building which had been built for a shoe factory and used as such for approximately twenty years, a wooden storehouse, two tenement houses, and a stable. This real estate, the valuation of which is in controversy, was assessed for the year 1933 at $191,000. The petitioner complains only as to the assessment on the land of $60,700, and on the factory building of $120,000.

In December, 1932, the petitioner purchased this property at public sale from the receiver of Alfred J. Sweet Co., together with certain equipment and materials worth from $10,000 to $15,000, paying for the whole the sum of $100,000. Alfred J. Sweet Co. had in turn in 1927 bought the property and the business from the original owner, Alfred J. Sweet, Inc., which received therefor 1200 shares of the common stock of the purchasing corporation and $1,320,000 in preferred stock. To the time of this purchase the business had been very profitable.

The original building was constructed in 1908; a second section was added in 1912, and in 1914 more land was bought and a third section was built. The total net book value of land and buildings December 1, 1916, was $184,646.95. The factory was well built, in fact much better than the average shoe factory, and undoubtedly would not be duplicated today in so costly a form, assuming that there were a demand for an additional plant. It is conceded that the modern trend in the shoe business is to operate in much less substantial buildings, and thereby tie up less capital in

fixed assets. This tendency is properly alluded to by the petitioner, and unquestionably has a bearing on the consideration which must be given to reproduction costs in determining the true value of the property.

The petitioner bases its claim for an abatement on two grounds, first, that the valuation was greatly in excess of the just value of the property, and second, that it was fixed unequally and on a greater percent of the true and full value than the rate at which other property, subject to like taxation in said city, was assessed.

Every property owner understands the obligation that he must bear his just share of the public expense. If that burden is too heavy, his remedy lies not in the courts. It is only when he bears a disproportionate share of the load that he has a just claim for judicial redress. The real gravamen of his complaint is the lack of equality and uniformity. *Spear* v. *City of Bath*, 125 Me., 27, 130 A., 507 ; *City of Roanoke* v. *Williams*, 161 Va., 351, 170 S. E., 726. If, however, he shows that his property is assessed substantially in excess of its true value, a presumption arises of inequality and he has made out a prima facie case for relief. *Spear* v. *City of Bath*, supra.

The Constitution of Maine provides, Art. IX, Sec. 8, that "All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof."

It has been said that the term "just value" is the equivalent of "correct," "honest," or "true" value. 4 Words & Phrases, 3904. Such definition is, however, not particularly helpful in the solution of the problem before us. If has been held that "market value" is the equivalent of "real value," *Bangor & Piscataquis Railroad Company* v. *McComb*, 60 Me., 290 ; and in *Chase* v. *City of Portland*, 86 Me., 367, 29 A., 1104, "value" is said to be synonymous with "market value." Such being the case it is difficult to conceive of any substantial difference in the words "value," "just value" and "market value."

The real problem lies not so much in defining terms as in applying them ; and particularly during the chaotic conditions of the last few years have the difficulties of tax assessors been enhanced, when they must, as it were, catch values which are on the wing. In

an appraisal for tax purposes, due consideration must be given to all the uses to which such property may be put by an owner. *Lodge* v. *Inhabitants of Swampscott*, 216 Mass., 260, 103 N. E., 635. Its value is measured by the highest price that a normal purchaser, not under peculiar compulsion, will pay for it. *National Bank of Commerce* v. *City of New Bedford*, 175 Mass., 257, 56 N. E., 288. It is what it will bring at a fair public sale, when one party wishes to sell and another to buy. *Chase* v. *City of Portland*, supra; *Lawrence* v. *City of Boston*, 119 Mass., 126; *Blackstone Manufacturing Co.* v. *Inhabitants of Blackstone*, 200 Mass., 82, 85 N. E., 880. Assessors are not, however, obliged to follow the fleeting, speculative fancy of the moment; they should recognize that the true value of a fixed asset such as real estate is fairly constant and must be gauged by conditions not temporary and extraordinary, but by those which over a period of time will be regarded as measurably stable. *Tremont and Suffolk Mills* v. *City of Lowell*, 271 Mass., 1, 170 N. E., 819; *Central Realty Co.* v. *Board of Review*, 110 W. Va., 437, 158 S. E., 537; *Somers* v. *City of Meriden*, 174 A., 184 (Conn. 1934). Violent fluctuations in municipal income are not desirable, and assessors in listing values may, to a certain extent, disregard the excesses of a boom as well as the despair of a depression.

If, during a time of crisis, it is impossible to determine the true worth of real estate by reference to the price which such property will bring in the market, resort may be had to other factors. Consideration may be given to the original cost of construction less depreciation, although perhaps this is less important than other things, to reproduction cost with an allowance for depreciation, to the purchase price, if not sold under stress or unusual conditions, to its capacity to earn money for its owner. No one of these elements is controlling, but each has its place in estimating value for purposes of taxation. *Spear* v. *City of Bath*, supra; *Central Realty Co.* v. *Board of Review*, supra; *Underwood Typewriter Co.* v. *City of Hartford*, 99 Conn., 329, 122 A., 91; *Massachusetts General Hospital* v. *Inhabitants of Belmont*, 233 Mass., 190, 124 N. E., 21; *Somers* v. *City of Meriden*, supra; 2 *Cooley, Taxation* (4 ed.), 1147.

The burden is on the petitioner to show that the valuation is un-

just, not on the assessors to establish that their figures are correct. The presumption is that the assessment is valid. *Penobscot Chemical Fibre Co.* v. *Inhabitants of the Town of Bradley,* 99 Me., 263, 59 A., 83; *Spear* v. *City of Bath,* supra; *City of Roanoke* v. *Williams,* supra; *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U. S., 350.

It is furthermore generally recognized that it is not sufficient to show merely that the taxing board has made an error, even though such mistake may result in a lack of uniformity. *Penobscot Chemical Fibre Co.* v. *Inhabitants of the Town of Bradley,* supra; *Maish* v. *Territory of Arizona,* 164 U. S., 599; *Sioux City Bridge Co.* v. *Dakota County,* 260 U. S., 441. The reason for such a doctrine is obvious. Mathematical precision is impossible in dealing with taxable values. Uniformity can only be approximated. The court is not a board of review to correct errors. It is solely where there is evident a systematic purpose on the part of a taxing board to cast a disproportionate share of the public burden on one taxpayer, or one class of taxpayers, that the court will intervene. In *Shawmut Manufacturing Co.* v. *Town of Benton,* 123 Me., 121, 130, 122 A., 49, 53, this principle has been definitely enunciated in the following language, quoting with approval the words of Chief Justice Taft in *Sioux City Bridge* v. *Dakota County,* supra; "The proving of a mere error of human judgment, as has been indicated, will not support a claim of overrating; 'there must be something more —something which in effect amounts to an intentional violation of the essential principle of practical uniformity.'"

Such being the law, has the petitioner shown, as claimed, either that his property was assessed in excess of its just value, or at a higher per cent of the true value than other property subject to like taxation was assessed generally?

To support the first claim, the petitioner relies on the testimony of Alfred J. Sweet, the president and the treasurer of the petitioner, who also had been the principal owner and directing head of the original company, and on the testimony of John W. Wood, a prominent shoe manufacturer of Auburn.

Mr. Sweet points out that the property, which included also about $10,000 of equipment, was bought by the petitioner at a receiver's sale in 1932 for $100,000, and that this in his opinion rep-

resents what at that time it was really worth. It is established that owing to the grade and the undeveloped condition of South Goff Street the back part of the land is of very much less value than the front; and the petitioner contends that a valuation of forty cents a foot for so large a tract, a part of which can not be used, is excessive. It is further shown that the book value of the real estate in 1916 was $184,646.95, which represented the original cost less a small amount charged off for depreciation to that time. Mr. Sweet also satisfies us that the present trend is to build much less costly factories; and counsel argues that, such being the case, the permanent and substantial character of this factory building adds but little to its worth. Mr. Sweet is corroborated on this point by Mr. Wood, who also places a value on the real estate of $100,000. A tabulation is also offered by the petitioner showing the income and expense of the property for 1933 and for eleven months of 1934. This shows a gross income for 1933 of $13,871.26 and an expense of $22,189.29, a gross income for 1934 of $29,146.86 and an expense of $21,396.87. Some adjustment of these figures is undoubtedly necessary, as no depreciation is charged and no allowance made for loss of rental due to changes in tenancies. The figures for 1933 mean but little because of the fact that certain allowances in rent were made at the beginning of tenancies.

Such in brief is the testimony which the petitioner claims shows an over-valuation of this property. It does not, however, tell the whole story. The original cost, measured by a scale of prices of a score of years ago, may throw some light on the problem but is of minor significance. Neither is the purchase price at the receiver's sale of great consequence. The property changed hands during the depths of a depression at a time when, to say the least, it was difficult to find purchasers who could finance so large an enterprise. That the petitioner was able to buy it at that time for $100,000 is of small moment. *Spear* v. *City of Bath,* supra; *Tremont and Suffolk Mills* v. *City of Lowell,* supra. The important evidence supporting the petitioner's contention is, therefore, the opinion expressed by Mr. Sweet, that the value was $90,000, and that of Mr. Wood that it was $100,000, and even so far as these men are concerned, it is apparent that their views are colored by the conditions existing during the depression.

To meet this testimony, the defendant offers evidence of the reproduction cost of this factory with a deduction for depreciation. Figured on this basis, the building would have a value of approximately $179,000. In considering this figure, however, allowance should be made for the fact that today as serviceable a building could be constructed for less cost. Mr. Greenleaf, who testified on this point, also placed a value on the land of sixty-five cents a foot. In addition to this, there was the testimony of Mr. Ford, the city manager, who, from a rather involved formula, figured a rental value for the property, which, for what it is worth, would indicate that the assessment of $120,000 on the building was not far wrong. Mr. Ford also gave his opinion that the land was worth from sixty-five to seventy cents a foot and the building from $165,000 to $175,000. Mr. Whitney, the chairman of the Board of Assessors of Auburn, testified that the board relied on Mr. Ford, the city manager, for technical advice, and that his formula was given consideration. The witness stated that, regardless of any formula, the value of the factory building was considerably in excess of $120,000. A Mr. Gayton, a real estate broker in Auburn, was called as a witness by the city. He testified that the land was worth $105,000. His testimony does not seem particularly convincing, and we prefer to rely on other evidence in reaching our conclusion.

It is true that the values placed on this property, particularly that on the land, at first glance seem high; but, considering all of the testimony, and particularly the tabulations showing probable earnings, we can not say that the petitioner has sustained the burden of proving, as set forth in its petition, that the real estate was appraised greatly in excess of its just value.

Has the petitioner established its second claim, that the valuations on its property were fixed unequally and on a greater per cent of the true value than the rates at which other property subject to like taxation was assessed? We think not.

The petitioner relies on the fact that the assessors claim to appraise property at approximately seventy-five per cent of its true value. Counsel then assert that without regard to such percentage the taxing board has adopted Mr. Ford's formula as the measure of the sound value of industrial property and assessed the peti-

tioner's property at one hundred per cent of such figure. There is a good deal in Mr. Ford's testimony to justify the claim of counsel that the result obtained from his very complicated formula is a figure which represents what is to him the sound value of the property, and that such value is synonymous with market value. Hence it is not unreasonable to assert that if the property was assessed at one hundred per cent of this figure, it was overvalued with respect to other property. Mr. Ford subsequently, however, seemed to qualify this portion of his testimony and arrived at a figure of $163,700 as the sound value, seventy per cent of which would be approximately the valuation fixed by the assessors. But it is a difficult matter for the petitioner to make out its case by showing inconsistencies in Mr. Ford's testimony or confusion in the method by which he arrived at his result. Mr. Ford was not one of the assessors. Mr. Whitney, the chairman of the board, testified that they relied on Mr. Ford's advice, and accepted his computations when they considered them fair. He testifies categorically that the figure of $120,000 placed on this building by the assessors was considerably less than its true value and that it was within the sixty-five or seventy per cent ratio established for other property.

In the light of this evidence, we can not hold that there was in fact any disproportionate burden put on the property of the petitioner, much less that there is evidence of any intent on the part of the board of assessors to do so. Mistakes may have been made. In the work of assessors they are inevitable, particularly in such times as we are now passing through. Due consideration must be given to the fact that in assessing property for purpose of taxation, it is impossible to obtain absolute equality, and that good faith is the most important element in the work of a taxing board.

*Appeal dismissed.*