THOMAS J. FITZSIMMONS, CHARLES R. REED, SR., and HARRY A. PROSCENO, Constituting the Board of Assessment of the City of Wilmington, Delaware, Appelles Below, Appellants, v. THOMAS A. McCORKLE and MARGARET B. McCORKLE, Trustees, Owners and Wright & Simon, Inc., Lessee, Appellants Below, Appellees.

(*November* 1, 1965)

WOLCOTT, C.J., and CAREY and HERRMANN, JJ., sitting.

*O. Francis Biondi,* City Sol., and *Frank J. Gentile, Jr.,* City Sol., for appellants.

*Albert L. Simon,* for appellees.

Supreme Court of the State of Delaware. No. 38, 1965.

HERRMANN, Justice.

This as an appeal from an order of the Superior Court modifying a decision of the Board of Assessment for the City of Wilmington (hereinafter the "Board") as to the amount of assessment on the property at No. 911 Market Street in Wilmington.

I

The proceedings before the Board and the Superior Court were governed by three Statutes:

28 Del.Laws, Chap. 121[1] created the Board to make assessments for city and school taxes on real estate in Wilmington, based upon the "estimated full value" of each property. 51 Del.Laws, Chap. 4 (amending Sections 14 and 15 of 28 Del.Laws, Chap. 121) set forth the procedures to be followed by the Board in publicizing its assessments and in hearing appeals therefrom.[2] And 53 Del.Laws, Chap. 33, added further details governing assessments, appeals from the Board to the Superior Court, and appeals from the Superior Court to this Court.[3]

----

[1] 28 Del.Laws, Chap. 121, Sec. 8 provides in part:
"* * * The assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated full value of the property assessed, and so pro rata. All assessments upon real estate shall be so made as to show separately the valuation of the property assessed, * * *."

[2] As to the scope and nature of the appeal to the Board, 51 Del.Laws, Chap. 4 provides in part:
"Section 15. The Board of Assessment for the City of Wilmington shall also hear and determine all appeals respecting the assessments. * * *. Upon appeals the said Board shall have power to make additional assessments or alterations whether appeal has been filed or not, but where no appeal has been filed, proper notice of such additions or alterations shall be given to the owners or their agents whenever possible; the said Board in connection with said assessment shall have the power to determine and to do whatever may appertain to justice and right. * * *."

[3] 53 Del.Laws, Chap. 33 provides:
"Sec. 15A. Appeals to the Superior Court
"In sitting and hearing appeals filed as provided in Section 15, the Board of Assessment for the City of Wilmington shall permit the introduction of all relevant evidence, including the testimony of witnesses, presented by the appellant or on behalf of the Board of Assessment. The Board shall make and keep a record of all evidence presented at such appeal proceedings. The Board shall notify the appellant in writing, by registered mail, of the Board's decision within five days of the date of its decision. Any person who feels aggrieved by the decision of the Board may, within 30 days after receiving notice of the Board's decision, appeal therefrom to the Superior Court of the State of Delaware. The decision of the Board shall be prima facie correct and the burden of proof shall be on the appellant to show that the Board acted contrary to law, fraudulently, arbitrarily or capriciously. The appeal shall be heard on the proceedings of the Board which shall be certified to the Court by the Board within 15 days after service on the Board of the notice of appeal. The Court may affirm, reverse or modify the decision of the Board. Either party to the appeal may appeal such decision of the Superior Court to the Supreme Court of the State of Delaware, provided that such appeal is taken in accordance with the Rules of Procedure of the Superior Court of the State of Delaware and the Rules of the Supreme Court of the State of Delaware."

## II.

For the tax year 1962, the Board evaluated the land of the subject property at $95,340 and the building at $31,550, at total of $126,890, as the property's "estimated full value." Applying the uniform percentage factor of 70% of value, the Board placed an assessment of $66,738 on the land and $22,085 on the building. This assessment has been the same since 1955.

The property owners appealed to the Board for reduction of the assessment. At the hearing, Robert E. Hickman, appearing as an expert witness on behalf of the owners, testified that the market value of the property, land and building, at the time of the assessment was $80,000. Mr. Hickman based his opinion upon sales and rentals of other properties which he considered comparable and upon the capitalization of the net rental income of the subject property. The Board heard no other evidence.[4]

Upon the record of the proceedings before the Board, supplemented by an affidavit of Mr. Hickman further explaining his testimony, the Superior Court reversed the Board, set aside the assessment, and instructed the Board to asses the property on the basis of Mr. Hickman's valuation of $80,000. The Superior Court held that the record failed to support any assessment in excess of that established by the owners' evidence. The Board appeals to this Court.

The Board contends that the expert opinion evidence adduced on behalf of the owners failed to sustain the burden of proof, imposed upon them by 53 Del.Laws, Chap. 33, to show that the Board acted "contrary to law, fraudulently, arbitrarily or capriciously." The Board argues that the owners' evidence fell short of this statutory requirement

---

[4]It appears that members of the Board viewed the property after the appeal was taken but the record does not show what information was acquired thereby. In this connection, it is noteworthy that in condemnation cases the view of the premises is not evidence; it is only for the purpose of better understanding the evidence. 10 *Del. C.* Sec. 6108(d).

in that their expert witness improperly equated "present market value" with "estimated full value"; that the expert failed to consider certain comparable sales which the Board considered significant; and that the witness declined to consider the tenant's gross sales in determining the property's fair rental value and fair market value. We are also told that, to prevail, the owners must show that their assessment is disproportionate to assessments of other properties; and that the Superior Court erred in directing the Board to reduce and apportion the assessment between land and building.

### III.

On an appeal from an assessment, a *prima facie* case of accuracy is made by the assessment record. The burden of presenting evidence to meet the *prima facie* case and to rebut the presumption rests upon the property owner. To fulfill the purpose, the owner's evidence must not only be competent; it must be sufficient to show a substantial overvaluation. If rebutted by such evidence, the presumption in favor of the accuracy of the assessment ceases to exist. As provided by 53 Del.Laws, Chap. 33, the Board may then hear evidence to support the assessment. But the Board may not rely solely upon its assessment record, or personal knowledge of its members unsupported by evidence. in the face of countervailing competent and substantial evidence. By so doing, the Board leaves nothing before the courts for judicial review on further appeal except a rebutted presumption of accuracy and a discredited *prima facie* case. It follows that when the owner's evidence is competent and substantial and unrebutted, there is little for the courts to do, on such record, but to conclude that the Board acted at least arbitrarily, if not contrary to law, in making an assessment on the basis of a value substantially greater than that established by the only evidence in the case. Compare *Deitch Company v. Board of Property Assessment*, etc., 417 Pa. 213, 209 A.2d 397 (1965); *Aetna Life Insurance Co. v. City of Newark*, 10 N.J. 99, 89 A.2d 385 (1952).

### IV.

 The question then is whether the owner's evidence was competent and sufficient to overcome the presumption of accuracy and the *prima facie* case made out by the assessment record. We think it was.

The qualification of the witness produced by the owners, as an expert on values of Wilmington real estate, is unquestioned. Was his opinion supported by valid and acceptable reasons under the law?

 The expert's use of present market value as a measure of the statutory "estimated full value" was proper. The term "estimated full value" was proper. The term "estimated full value" is not defined in the Statute; but it is not unsual to find such general, undfined bases in tax statutes. It is generally agreed thereunder that the fundamental rule, for evaluation of real estate for the purposes of taxation, is that it is to be valued at its present actual market value, in the determination of which all elements directly affecting value may be considered. This Court so held in *Council of Newark v. Clairingbold*, 5 Boyce 133, 90 A. 1130 (1914), aff'd. 5 Boyce 507, 94 A. 1102 (1915), wherein the Statute provided for an assessment basis of "true, just and impartial valuation." Likewise, New York's "full value", Maryland's "full cash value", Pennsylvania's "actual value", New Jersey's "true value", and other similar statutory terms, have been held to equate market value. *People ex rel. Guaranty Trust Co. of N.Y. v. Cook,* Sup., 18 N.Y.S. 2d 965 (1940); *Rogan v. County Commissioners of Calvert County,* 194 Md. 299, 71 A.2d 47, 52 (1950); *McKnight Shop. Center, Inc. v. Board of Prop. Assess.,* etc., 417 Pa. 234, 209 A.2d 389, 391 (1965); *City of Newark v. West Milford Tp. Passaic County,* 9 N.J. 295, 88, A.2d 211, 214 (1952); *Sheldon House Club, Inc. v. Town of Branford,* 149 Conn. 28, 175 A.2d 186, 188 (1961); 1 Bonbright, Valuation of Property, pp. 460, et seq.; 51 Am.Jur. "Taxation" Secs. 696, 701. While value measured by market sales is not the sole standard for tax assessment purposes, and other elements and methods of valuation are pertinent and relevant, *Brennan v. Black,* 34 Del. Ch. 380, 104 A.2d 777, 793–794, (1954); *Sibley v. Town of Middlefield,* 143 Conn. 100, 120 A.2d 77, 80 (1956), fair market remains the basic measure. 51 Am.Jur. "Taxation" Secs. 696, 701, et

seq.; 1 Bonbright, Valuation of Property, pp. 460, et seq.

In definding fair market value, we may use the definition we have adopted in condemnation cases. *Great Northern Ry. Co. v Weeks,* 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936). It is the price which would be agreed upon by a willing seller and a willing buyer, under usual and ordinary circumstances, without any compulsion upon the seller to sell or upon the buyer to buy, *State ex rel Smith v. 0.15 Acres of Land,* Storey 372, 169 A.2d 256, 258 (1961), assuming the highest, best and most valuable use for which the property is reasonably adaptable and available. *Board of Education, etc. v. 13 Acres of Land, etc.,* 11 Terry 387, 131 A.2d 180 (1957).

The expert witness used two well recognized methods of determining market value: the comparable sales method and the capitalization of rental income method.

The price at which comparable property in the area has been bought and sold recently is generally accepted as one of the best tests in determining the market value of real estate. Where, however, evidence of such sales is not available, or where a double-checking of result is desired, other methods may be employed to ascertain value; and capitalization of rental income is generally recognized as one such method. *Sibley v. Town of Middlefield,* supra; 51 Am.Jr. "Taxation" Secs. 702, 703.

As comparable market data, the expert witness testified that he considered the sales and the rental income of certain other properties in Wilmington, including Nos. 604, 611, 701, 709, and 823 Market Street. These transactions were not attacked as being imporper comparables under the established tests of similarity of improvements, size, location, and general adaptability; reasonable recency of the transaction; and a bona fide willing buyer-willing seller relationship. *Wilmington Housing Authority v. Harris,* 8 Terry 469, 93 A.2d 518, 522 (1952). The Board indicated, rather, that other transactions in the same city block as the subject property would have been better

comparables. The difficuty with this argument is that the record lacks any evidence of such other comparables or the reasons why they would have greater probative value. Therefore, on judicial review, no legal basis appears for discrediting or rejecting, as incompetent, the expert's opinion of value based upon the market data he used.

As to the rental income basis for his opinion, the expert capitalized the net rental lease on the subject property and added the value of certain leasehold improvements. The lease had an unexpired term of 10 years and provided for the tenant to pay all taxes, insurance, repairs and other expenses. While the reliability of the capitalization of net rental income may be questionable as the sole basis for valuation, *Aetna LIfe Ins. Co. v. City of Newark,* supra, clearly it is a proper element of value to be considered together with other pertinent and relevant elements. *Brennan v. Black,* supra; 51 Am.Jur. "Taxation Secs. 702–705.

There is some question as to whether the owners failed to produce the tenant's gross sales figures at the Board's request, or whether the Board withdrew the request. It is immaterial, we think, because the longterm lease here involved was not a gross sales percentage lease and, therefore, such data would have had little probative value in any event.

Turning to the sufficiency of the owners' proof, we have observed that the expert witness produced by the owners was qualified beyond question; that his opinion was based upon valid and acceptable grounds; and that there is a wide variance between the Board's valuation of approximately $127,000 and the owners' evidence of a value of $80,000. Recognizing that the owners' evidence must be substantial in quality, *Aetna Life Ins. Co. V. City of Newark,* supra, and that the courts will not intervene in the assessment process unless overvaluation is substantial. *Alfred J. Sweet, Inc. v. City of Auburn,* 134 Me. 28, 180 A. 803, 104 A.L.R. 784 (1935), we find the owners' evidence in the instance case substantial in both respects.

We conclude that the owners' evidence was competent and

sufficient to rebut the presumption of accuracy and to overcome the *prima facie* case made by the assessment record. Since the owners' evidence stands unrebutted, we hold that the owners have sustained the burden of proving that the Board acted arbitrarily in declining to reduce the assessment in accordance with the only evidence in the case.

V.

The Board asserts that, to prevail, the owners must show that their assessment is disproportionate to other assessments. It is argued that uniformity, the ultimate constitutional standard of tax law (Del. Const. Art.8, Sec. 1, *Del.C.*Ann.), formed the basis of the Board's decision, witness its finding that the subject assessment is "in line with the adjoining properties."

Undoubtedly, equality and uniformity are the cardinal principles to be observed in the levying of taxes; and where it is impossible to secure both the standard of value and the uniformity and equality required by law, the latter requirement is to be preferred as the "just and ultimate purpose of the law." *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923). In the final analysis, the gravamen of a complaint for overassessment is lack of equality and uniformity; for it is only when the property owner bears a disporportionate share of the tax load that he has a just claim for redress. And overvaluation does not necessarily mean lack of uniformity and equality; for if the appraisal of all real estate in a tax district is uniform, through all values be inflated, the reduction of one assessment, without corresponding reduction of all other property, produces not equality but inequality. *Sloman-Polk Co. v. City of Detroit,* 261 Mich. 689, 247 N.W. 95, 87 A.L.R. 1294 (1933). Thus, it is understandable that the Board would accord precedence to unformity over standard of value when a choice must be made.

The problem is one of proof. The majority rule is that when, nothing else appearing, it is shown that a property is appraised substantially in excess of its market value, a presumption of inequality arises and a *prima facie* case for relief is made. In maxim form: If

substantial overvaluation is proven, inequality is presumed. *Alfred J. Sweet, Inc. v. City of Auburn*, 134 Me.28, 180 A. 803, 104 A.L.R. 784 (1935); *People ex rel. Amalgamated Properties, Inc. v. Sutton*, 274 N.Y. 309, 8 N.E.2d 871 (1937); *People ex rel. Guaranty Trust Co. of N.Y. v. Cook*, Sup., 18 N.Y.S.2d 965, 968–969 (1940); *Lowell v. Commissioners of Middlesex County*, 152 Mass. 372, 25 N.E. 469, 470, 9 L.R.A. 356 (1890).

On the point, the Board relies upon *Hodges v. Town of Kensington*, 102 N.H. 399, 157 A.2d 649 (1960); Appeal of McConomy, 156 Pa.Super. 264, 40 A.2d 99 (1944); and *Cupples Hesse Corp. v. State Tax Commission*, Mo., 329 S.W.2d 696 (1959).

As indicated in Hodges, it is the rule in New Hampshire that, in a tax abatement case, if a plaintiff shows that his property is assessed at more than its market value, he must go further and show that his assessment is disproportionate to that of other property in that taxing district.[5] And, as appears in Cupples Hesse, the rule in Missouri requires the taxpayer to show a valuation excessive when compared with other real estate generally.

The McConomy case does not support the Board's position. It there appears that the assessing authority introduced comptent evidence of front foot value and evidence from which it could be inferred that real estate throughout the neighborhood was assessed at the same value. No such evidence appears in the case before us. Compare *Crucible Steel Co. of America v. Allegheny County Board of Property Assessment*, 356 Pa. 373, 52 A.2d 190, 194 (1947).

We disagree in principle with the rule urged by the Board.

---

[5] It is to be noted that the Board related the assessment of the subject property to "adjoining properties" only. This would appear to be an inadequate disproportion in any event because, in considering equality and uniformity, the comparsion is with all other property in the taxing district, *Sloman-Polk Co. v. City of Detroit*, supra; or with other property generally, *Cupples Hesse Corp. v. State Tax Commission*, supra; or at least with other like property similarly situated, *Kinnear v. King County*, 124 Wash. 102, 213 P.472 (1923).

It imposes too heavy a burden of proof upon the taxpayer; and it is based upon the unacceptable assumption that public officials may not have performed their duty and that other property in the taxing district may also be overvalued and overassessed in violation of law. See *Rollins v. City of Dover*, 93 N.H. 448, 44 A.2d 113 (1945); *People ex rel. Amalgamated Properties, Inc. v. Sutton*, supra. In our view, the presumption of inequality arising from substantial overvaluation is the better rule and we adopt it.

We hold that the owners' showing of substantial overvaluation in the instant case raised a presumption of inequality; and that the owners were entitled to rely on that presumption until rebutted and were not required to produce further evidence of discrimination.

## VI.

There is no merit in the Board's contention that the Superior Court erred in ordering the Board to reduce and apportion the assessment between land and building. by 28 Del.Laws, Chap. 121, Sec.8, supra, it is provided that all assessments shall show separately the valuations on the land and the improvements. By 53 Del.Laws, Chap. 33, supra, it is provided that the Superior Court may affirm, reverse or modify the decision of the Board. The Superior Court acted within its powers. in requiring the Board to modify its assessment in accordance with the Court's decision and the governing Statute.

Having reviewed the appellants' contentions and finding no error in the judgment of the Superior Court, it is affirmed.