BOARD OF ASSESSMENT REVIEW
FOR NEW CASTLE COUNTY,
Appellant,

v.

William K. STEWART and John J.
Nugent, t/a Woodland Apartments,
Appellees.

Supreme Court of Delaware.

Submitted June 17, 1977.

Decided Aug. 3, 1977.

Catherine S. Mulholland, New Castle
County Dept. of Law, Wilmington, for appellant.

J. R. Julian, of Connolly, Bove & Lodge,
Wilmington, for appellees.

Before DUFFY and McNEILLY, JJ., and
BROWN, Vice Chancellor.

DUFFY, Justice:

This appeal from the Superior Court
presents a State constitutional question
concerning the power of New Castle County
to define standards governing the assessment of real property for tax purposes.

I

The significant facts pertinent to the appeal are few and not in dispute.

Appellees are the owners of Woodland Apartments, an apartment complex consisting of two hundred sixty-one rental units situated on thirty-eight acres of land near the City of Wilmington. Prior to this controversy the property assessment was $1,269,100: $328,900 for land and $940,200 for buildings. That assessment was based on the general reassessment of all land in the County made by Cole-Layer-Trumble Company (C.L.T.) between 1969 and 1972, using 1970 as the base year.

In March 1975, appellees were advised that the Woodland assessment had been increased to $1,491,400,[1] reflecting a change in the building assessment of $222,300. The reason given by the County for the increase was the discovery of nine buildings which had been overlooked by C.L.T. at the time of the general reassessment.

Appellees appealed to the New Castle County Board of Assessment Review (Board), 9 *Del.C.* § 8311(a), where they sought, alternatively, both a reduction to the prior assessment and an overall reduction in the building assessment to $420,100. At a hearing before the Board, appellees adduced testimony from a real estate appraiser to the effect that the fair market value of the property was $1,070,000 and that the assessment value was $749,000,[2] allotting $328,900 for the land and $420,100 for the buildings. In reaching this figure, the expert had employed the "band of investment" technique using 1975 income and expense figures of the Apartment complex as the basis for his computations. The County's expert, a Division of Revenue assessor, testified to a significantly different conclusion. Employing the "mortgage-equity capitalization" approach and the "sales-data" technique, and utilizing 1970 income and expense figures, he calculated the building assessment at $1,162,500[3] (after applying the 70% factor).

The Board reduced the building assessment to $1,046,200 and appellees appealed to the Superior Court. 9 *Del.C.* § 8312(c). Relying on this Court's decision in *Fitzsimmons v. McCorkle*, Del.Supr., 214 A.2d 334 (1965), the Court agreed with appellees and ordered a reduction in assessment based on the evidence as to 1975 market value of the property. Accordingly, it reversed the decision by the Board of Assessment. The County then docketed this appeal.

## II

It is important to note at the outset what is not at issue in this appeal. As we have indicated, during the hearing before the Board, the litigants supported their respective positions with expert testimony and, as noted, each expert used a fundamentally different technique in formulating an opinion as to value. We are not, however, concerned with either the credibility of the experts or the reliability of the techniques used to value the buildings. The critical two-part question before the Court is entirely legal; specifically, does the constitutional mandate of uniformity in taxation permit the County to use a base year (1970) in the assessment of real property for tax purposes; or must the County base a specific assessment on current market value for a later year (in this case, 1975) when that amount is shown to be less than the 1970 value?

A significant limitation on the County's power to tax is the constitutional requirement of uniformity. "The principle of uniformity is the guidepost pointing the way for the local assessor . . . and for the courts in making such orders and decrees as may seem equitable and just on appeal." *In re Phinney*, 161 Pa.Super. 101, 53 A.2d 889, 891 (1947), quoting *Lehigh & Wilkes-*

---

1. It is somewhat difficult to reconcile the amount of the total assessment stated in the briefs in this Court and in the opinion of the Trial Court. The amount of the new assessment is variously stated as $1,491,800 and $1,490,500. For purposes of this opinion, we have selected from the transcript what appears to be the correct figure.

2. It is agreed that all property in the County is assessed on a 70%-of-value basis.

3. The parties also agree on the land assessment.

*Barre Coal Co. v. Luzerne County*, 225 Pa. 267, 74 A. 67, 68 (1909). Under Delaware law, the principle of uniformity is embodied in Article VIII, § 1 of the Constitution which provides, in pertinent part:

> "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, except as otherwise permitted herein, and shall be levied and collected under general laws passed by the General Assembly. . . ." [4]

■ Taxation is not an exact science and, therefore, the uniformity clause does not require that all taxes be assessed with computer precision against all taxpayers equally. Article VIII, § 1 simply requires that all taxpayers of the same class residing within the same tax district be treated equally. See *In Re Zoller's Estate*, Del. Supr., 3 Storey 448, 171 A.2d 375, 381 (1961); accord *Columbia Gas Trans. Corp. v. Commonwealth*, Pa., 360 A.2d 592, 595 (1976) and cases cited therein.

■ The principle of uniformity applies to all species of taxes but it is particularly important in the field of real estate taxation. For example, in *Brennan v. Black*, Del.Supr., 34 Del.Ch. 380, 104 A.2d 777 (1954), a certification from the Court of Chancery involving the constitutionality of Mount Pleasant School District's real property tax, this Court explained:

> "In any general reassessment of real estate for the purpose of taxation uniformity is the important and vital end to be obtained. The requirement of uniformity in the rate of taxation necessarily requires a reasonable measure of uniformity in the method of valuation. Deliberate discrimination between the taxpayers in the valuation of similar property is a violation of the constitutional requirement. This principle is well settled and is not to be questioned."

*Id.* at 797. Uniformity there must be but, clearly, in the taxation of real property it cannot be achieved without a uniform system of assessment. We now turn to that matter.

### III

■ There is a strong preference in Delaware for using the present market value of real property as its value for assessment purposes. This preference has roots in both the statutory and case law of the State; see, for example, 9 *Del.C.* § 8306(a) which provides:

> "All property subject to assessment shall be assessed at its *true value in money*." (Emphasis added.)

But perhaps the strongest statement of support for the current market value measure of assessment was made by this Court in *Fitzsimmons v. McCorkle*, supra. At issue in that case was Section 8 of 28 *Del.L.*, ch. 121 which called for real property to be assessed according to its "estimated full value." *Id.* at 336. The Court approved of the use of present market value as a measure of "estimated full value," and went on to explain:

> "It is generally agreed thereunder that the fundamental rule, for evaluation of real estate for the purpose of taxation, is that it is to be valued at its present actual market value, in the determination of which all elements directly affecting value may be considered. . . . [Citations omitted.] While value measured by market sales is not the sole standard for tax assessment purposes, and other elements and methods of valuation are pertinent and relevant, *Brennan v. Black* . . . [supra at 793–94] [citations omitted], fair market value remains the basic measure. [Citations omitted.]"

*Id.* at 338.

■ Optimally, every system of assessment will incorporate both the preference

---

4. This article of the Constitution has been the subject of many recent amendments. This appeal is governed by the Article in effect until May 25, 1976. 59 *Del.L.*, ch. 446. The current version became law after that date. See 60 *Del.L.*, chs. 437–38. On June 30, 1976, an additional amendment was initially approved focusing on sentences 3 and 4 of paragraph 1. 60 *Del.L.*, ch. 521. Throughout all these changes, however, the language pertinent to this appeal remained unchanged.

for present market value and the requirement of uniformity into its general scheme; but, when these two concepts cannot be accommodated under the facts of a specific case, the former must give way to the latter as the true measure of assessment. As this Court said in *Fitzsimmons* :

"Undoubtedly, equality and uniformity are the cardinal principles to be observed in the levying of taxes; *and where it is impossible to secure both the standard of value and the uniformity and equality required by law, the latter requirement is to be preferred as the 'just and ultimate purpose of the law.'* [emphasis added]. *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923)."

*Id.* at 339. Accord *Kittery Electric Light Co. v. Assessors of Town,* Me.Supr., 219 A.2d 728 (1966); *Buhl Foundation v. Board of Property Assessment,* 407 Pa. 567, 180 A.2d 900 (1962); *Valley Forge Golf Club v. Board of A. & R. of Taxes,* 3 Pa.Cmwlth. 644, 285 A.2d 213 (1971); *In re Phinney,* supra.

It is doubtful that real property values will remain constant in a dynamic economy and frequent economic change will strain any system of assessment which seeks to be uniform. One way to keep assessed values and market values closely aligned, of course, is to require short-term cyclical general reassessments. However, present Delaware law does not now require that there be periodic general reassessments, and it is not argued here that an unreasonable period of time has passed since the last general assessment was made in 1970.

Under the terms of 9 *Del.C.* § 1301(1), the County Department of Finance is charged with the responsibility of assessing all property for taxation and, in the interest of uniformity, it has selected the base year method of assessment. Under this method, all County property is assessed in terms of 1970 values, regardless of when the assessment is made; assessments made after 1970 are "factored back" to that year using formulae and techniques which are not in dispute here. A fixed rate of taxation is then applied to the base year assessment to reach a uniform result.

■ Appellees contend that the County should be obliged to abandon this approach when the present market value of the property, as determined at a later date, is known. However, implementation of such a system, without a general class-wide reassessment every time a property is assessed or reassessed would result in the application of different measures of assessment between taxpayers of the same class. That is precisely the result prohibited by Article VIII, § 1. Faced with these alternatives, "it is understandable that the Board would accord precedence to uniformity over standard of value when . . . [the] choice . . . [had to] be made." *Fitzsimmons v. McCorkle,* supra at 340. We hold that the County may use the "base year" formula as a method of implementing the constitutional mandate of tax uniformity.

## IV

■ When a decision of the Board is appealed to the Superior Court the assessment by the County is presumed to be correct and will be reversed only if the aggrieved party can show that the County "acted contrary to law, fraudulently, arbitrarily or capriciously." 9 *Del.C.* § 8312(c). Here, the record consists primarily of expert testimony as to market and assessed values of Woodland Apartments; the County's expert expressed those values in terms of 1970, while appellees' expert used 1975 figures. In view of the ruling of law made herein, the testimony of appellees' expert is not entitled to weight because he did not use the proper year as the foundation for his calculations. Consequently, the County's evidence is uncontroverted and is sufficient to sustain the decision of the Board. We conclude, therefore, that appellees failed to carry their burden on appeal and that the decision of the Superior Court must be reversed.

Reversed.