SEAFORD ASSOCIATES, L.P. and
David Cordish & Associates,
Appellants,

v.

BOARD OF ASSESSMENT REVIEW,
for Sussex County, Appellee.

No. 1651987.

Supreme Court of Delaware.

Submitted: Dec. 3, 1987.
Decided: March 17, 1988.
Rehearing Denied April 20, 1988.

William E. Manning, and John L. Olsen, of Duane, Morris & Heckscher, Wilmington, for appellants.

Robert V. Witsil, Jr., Legal Counsel to Sussex County, Georgetown, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

This is an appeal from a Superior Court affirmance of a decision of the Board of Assessment Review of Sussex County (the "Board") which denied a property assessment reduction requested by appellant, Seaford Associates, L.P. and David Cordish Associates (collectively "Seaford Associates"). Seaford Associates contends that the Superior Court erred in sustaining the Board's refusal to consider appraisal evidence based on the income capitalization method. We hold that the Board's refusal to consider such evidence based on the need for uniformity was arbitrary and erroneous as a matter of law. Accordingly, we reverse the decision of the Superior Court.

I

The pertinent facts underlying this appeal are not in dispute and the issue posed in the Superior Court, and in this Court, is essentially a legal one.

Seaford Associates is the owner of the Nylon Capital Shopping Center located on Stein Highway in Seaford, Delaware. The Nylon Center consists of three separate buildings housing various commercial establishments including a department store, a drug store, a grocery store, a bowling alley and other smaller retail shops. The center was constructed approximately twenty years ago. Most of its leases are "percentage-of-the-gross" type and are subject to periodic renewal. At the time Seaford Associates petitioned for an assessment reduction in early 1986, the Nylon Center was beginning to experience the effects of competition from a new regional shopping center, The Village Center, located on Route 13 in Seaford. Based on what it viewed as materially adverse effects on the expected income streams of its tenants, Seaford Associates sought a reduction of between 48 percent to 57 percent in the Center's 1985 assessment of $2,269,791.00.

In a hearing before the Board, Seaford Associates presented the testimony of the Nylon Center manager who described the impact of The Village Center and the population of its retail trade zone. He claimed that the Seaford area had a stable economy, and its population has grown at a steady but slow pace. The principal evidence of valuation in support of the assessment reduction was offered by Thomas C. Reynolds, an expert real estate appraiser whose written appraisal report had been supplied to the Board in advance of the hearing. It is this evidence, ultimately rejected by the Board, which is the focus of this appeal.

Sussex County real estate assessments are based on a 1974 base tax year. Thus the appraiser's task is to first determine a present (1986) valuation and then "factor back" that valuation to the base year since all Sussex County real estate is assessed at 50 percent of its 1974 value. In his search for present value Reynolds considered three separate valuation techniques: the market approach, the capitalization of income approach and the cost approach.[1] He rejected the market approach because of the lack of comparables, i.e., there had been no recent sales of similar shopping centers from which projections could be made. Reynolds similarly rejected the reproduction cost new technique, although he

---

1. The three techniques were explained in the Reynolds appraisal report as follows:

In the Market Approach recent sales of similar properties are examined and compared to the subject property. Market oriented adjustments are made for any differences between the comparable sales and the subject.

The Income Approach is a method of arriving at the estimated value of the property by analyzing the potential income and expenses from income producing real estate. The net income is then capitalized to indicate the value of the property as an investment. It assumes a return based on that which competitive properties are receiving.

In the Cost Approach, the site and improvements are treated separately for analytical purposes. By means of a market analysis, the site is valued independently as if vacant and ready to be put to its highest and best use.

Next, the reproduction cost new of the improvements is estimated. This represents the most probable cost of building a replica structure. From this estimate is deducted all depreciation or utility loss accruing to the building.

The depreciated cost new is then added to the total of site improvements and land value to arrive at the indicated value from this analysis.

used this method as a check against the valuation achieved through the capitalized income approach. His use of the cost technique yielded a present value of $3,344,000.00. He did not believe the cost approach had independent significance because one of the cost components, improvements on the "replica structure," was subject to functional obsolescence "due to the layout of the three buildings and their proximity to each other."

Reynolds' selection of the capitalization of income method proceeded on the assumption that the presence of the competing shopping center would be reflected in decreasing rental income (estimated at seven percent), higher vacancy rates and an increase in advertising to meet new competition. By applying the discount factors to a capitalized value with a competing center, as opposed to valuation without a competing center, Reynolds projected a discount to present value of 48 to 57.5 percent depending on whether a reduced tax rate resulting from the petition for reassessment was factored into expenses. The resulting valuation of $2,371,420 (rounded off to $2,400,000.00) without tax reduction represented the present value of the center as compared to its value of $5,555,965 without a competing center. Reynolds then applied a 50 percent reduction arrived at a 1974 base year figure of $1,118,570. Approximately the same result could be achieved by applying the 48 to 57.5 percent discount factor to the County's $2,269,791 base year assessment figure. In sum, Reynolds relied upon the income approach as the basis for a valuation which would reduce the present assessment between 48 percent to 57.5 percent.

In support of the existing assessment, the County offered the statements of Harold Carmean, Sussex County Director of Assessments, who opposed any reduction. While conceding that "the income approach is preferable from the investor's standpoint" he questioned the accuracy of certain data used by Reynolds. He urged the Board to reject the income method in favor of the cost approach, "the way it is currently done in Sussex County." Carmean advised the Board that "... if you decide to go with the income approach, then you are changing a system that is currently not [sic] in place and ramification that could cost."

In a written decision, the Board gave the following reason for denying an assessment reduction:

Sussex County has consistently used the "Cost Approach" for its valuation of property for assessment purposes and the "Income Approach" must be rejected for the sake of uniformity.

On appeal, the Superior Court upheld the Board's rejection of the income method. After noting the constitutional requirement of uniformity in taxes, the Superior Court ruled:

Thus, it is the duty of the individual taxing units to select an accepted method for the evaluation of the true value of real estate to be taxed. The county has done this by adopting one of the three accepted methods; that is, the cost less depreciation approach.

While acknowledging that a "different method would more accurately measure the market value of its property," the Court noted that the income approach would require a review of tax rate with fluctuation of income and the Board "must accord precedence to uniformity."

## II

A property owner seeking a reduction in assessment is faced with a substantial evidential burden at both the administrative and appellate levels. Before the Board of Assessment it confronts the presumption of accuracy in favor of the existing assessment, a presumption which is rebutted only through evidence of substantial overvaluation. *Fitzsimmons v. McCorkle*, Del. Supr., 214 A.2d 334, 337 (1965); *see also Delaware Racing Ass'n v. McMahon*, Del. Supr., 340 A.2d 837, 840 (1975). On appeal to the Superior Court, and on further appeal to this Court, the Board of Assessment decision is deemed "prima facie correct" and will be disturbed only if the appellant can show that the Board acted "con-

trary to law, fraudulently, arbitrarily or capriciously." 9 *Del.C.* § 8312(c).

Seaford Associates contends that it sustained its evidential burden of showing substantial overassessment through the appraisal expert who concluded that the shopping center was overassessed by double its fair market value. The Board counters that the burden of demonstrating overassessment in this case was not met because the valuation method relied upon by the property owner, the capitalization of income approach, was speculative and fraught with unsupported projections of both income and expenses.[2] The Board's contentions on appeal, however, do not square with its decision that it rejected the income approach "for the sake of uniformity" and in preference for its consistent use of the cost approach. While the Board may have had unarticulated reservations concerning the use of the data contained in Reynolds' income formulation, it posited its decision on a blanket rejection of the income method. The issue posed on appeal therefore does not call for a weighing of evidence to determine if the record supports a claim of overassessment. Rather, we address the narrow legal question of whether an administrative body charged with the duty of determining claims of overassessment may preclude application of one of the three accepted standards for real property valuation.

It is now well established in Delaware, as in most jurisdictions, that real estate tax assessments must be based on the property's "true value in money." 9 *Del.C.* § 8306(a); *see generally* Comment, *The Road to Uniformity in Real Estate Taxation: Valuation and Appeal,* 124 U.Pa.L. Rev. 1418, 1430 (1976). This concept is understood to be synonymous with fair market value. *Delaware Racing Ass'n v. McMahon,* 340 A.2d at 842; *Fitzsimmons v. McCorkle,* 214 A.2d at 338. This stan-

dard enjoys the same definition for assessment purposes as it finds in the law of condemnation—the price which would be agreed upon by a willing seller and a willing buyer, under ordinary circumstances, neither party being under any compulsion to buy or sell. *State ex rel. Smith v. 0.15 Acres of Land,* Del.Supr., 169 A.2d 256, 258 (1961). Accurate valuation of the property is essential to fairness in the assessment process. Although three principal methods of valuation are recognized, it is generally accepted that optimal valuation involves the use of all three to the extent the circumstances of a specific property will permit. *See generally* Comment, *supra* at 1430-40.

■ Despite the desirability of employing all three valuation approaches, one or two of the methods might be better suited to specific valuation judgments. In *Fitzsimmons,* this Court noted that the comparability or market method is generally accepted as a preferred test for valuation. The validity of that test, however, depends on the availability of a broad sample of comparables and the absence of such data requires resort to one of the remaining methods. *Fitzsimmons v. McCorkle,* 214 A.2d at 338. There seems little doubt that recourse to the market method was precluded in this case by the unique nature of the subject property and the lack of other shopping center sales for comparison purposes. The absence of such data precluded the application of the market method even for the limited purpose of checking or testing the results reached by the other two methods.

■ The capitalization of income method is most frequently applied, and, indeed, is viewed as the preferred method in evaluating income producing properties. *G.R.F., Inc. v. Bd. of Assessors of County of Nas-*

**2.** The Board's attack upon the failure of Seaford Associates to discharge its burden of proof of overassessment takes on added importance here since the only affirmative evidence of valuation was that offered by the property owner. The County Assessor did not testify but questioned Reynolds' appraisal methodology and urged the Board, as a matter of policy, not to adopt the

income method. Since there was no competing evidence and the Board admitted the evidence without reservation, the property owner "was justified in assuming the evidence was relevant and that its theory of the case was before the Board as an alternative." *Delaware Racing Ass'n v. McMahon,* 340 A.2d at 841.

*sau,* N.Y.Ct.App., 41 N.Y.2d 512, 393 N.Y. S.2d 965, 362 N.E.2d 597, 598 (1977). A capitalization of income approach must be used with care because of its many variables in projecting income and expenses as well as in the selection of a capitalization rate. It should not be accepted without checking against available data. *See New Brunswick v. Div. of Tax Appeals,* N.J. Supr., 39 N.J. 537, 189 A.2d 702, 706 (1963). When used, as proposed in this instance, the capitalization of income method in combination with another valuation method is competent evidence of valuation and cannot be ignored by a Board of Assessment.

■ The reproduction cost new method of valuation, favored by the Board in this case, is an acceptable valuation tool. However, it should not be applied as the sole method of valuation to the exclusion of results achieved from other techniques. A primary criticism of this method, if used exclusively, is that it may seriously overvalue the subject property. Because the cost approach, among other shortcomings, ignores entirely the factor of functional obsolescence, it is best suited for setting a ceiling on valuation. *G.R.F., Inc. v. Bd. of Assessors of County of Nassau,* 362 N.E. 2d at 599. This specific criticism was noted by Seaford Associates' expert and was the principal reason he did not rely upon the cost approach in his appraisal choosing instead to use it only for checking purposes.

■ The Board argues that it should not be required to accept an appraisal based on the income method, with its variables, to the exclusion of the cost approach, particularly in view of the County's consistent acceptance of the latter technique. This argument, however, misperceives the record before the Board. The only expert testimony received by the Board was that of Reynolds who relied primarily on the income approach but who also used the reproduction cost new standard for checking the valuation achieved through the income approach. Apart from a critique from the County Director of Assessment, the Board received no independent evidence of a cost valuation. This is not a case in which the Board made an informed judg-

ment to select one valuation approach over a competing presentation because it found the evidence more persuasive of its choice. *Cf. Board of Assessment Review, Etc. v. Stewart,* Del.Supr., 378 A.2d 113 (1977). Here, the Board simply refused to permit any application of the income method or give it any consideration in the proceeding before it. In so ruling, the Board acted arbitrarily and as a matter of law this action is not sustainable.

## III

■ The rationale for the Superior Court's affirmance of the Board's rejection of the income valuation method was that the Board was free to adopt one valuation method, to the exclusion of others, in the interest of uniformity—an attribute of taxation required by the Delaware Constitution. In so ruling, the Court misapplied the concept of uniformity.

■ Uniformity in taxes as mandated by the Delaware Constitution, is achieved when all taxpayers of the same general class and within the territorial limits of the authority are treated the same. Del. Const. art. VIII, § 1. As this Court ruled in *Board of Assessment Review v. Stewart,* 378 A.2d at 115:

Optimally, every system of assessment will incorporate both the preference for present market value and the requirement of uniformity into its general scheme; but when these two concepts cannot be accommodated under the facts of a specific case, the former must give way to the latter as the true measure of assessment.

In *Stewart,* the competing concepts related to the selection of two different base years, not two methods for determining value. Here in expressly "factoring back" his present evaluation to the 1974 base year Seaford Associates' expert applied the same valuation benchmark used by the Board. The requirement of uniformity does not, as the Board contends, require the taxing authority "to use a cost less depreciation assessment method which is factored back to a 1974 base tax year." Uniformity merely requires that present

market value be factored back to a base tax year. Market value, in turn, may be determined by using any of the three recognized methods, or any combination thereof. Thus, the preference for present market value and the need for uniformity are harmonized.

 Finally, we note the concern of the Board and the Superior Court that adoption of the income method may result in reassessment requests as income varies. As previously indicated, the income method of valuation, even where appropriate, should not be accepted as the sole method for fixing market value. If relied upon as the principal technique its validity must be tested against at least one of the two remaining standards. *See Fitzsimmons v. McCorkle*, 214 A.2d at 339. Moreover, the capitalization of income approach is directed to investment valuation over an extended period of time and its projection may not be based on aberrational operating results or temporary phenomena. The many variables of expenses and the factors which make up the capitalization rate are subject to close scrutiny to assure that they are both accurate and realistic.

The decision of the Superior Court is REVERSED and the case REMANDED to the Board of Assessment for further proceedings consistent with this opinion.