THE STATE OF DELAWARE, upon the relation of J. Gordon Smith, et al., constituting the State Highway Department of the State of Delaware, Plaintiff Below, Appellant, v. 0.15 ACRES OF LAND, more or less, in New Castle Hundred, New Castle County and State of Delaware, HARVEY MINTZER, and HARVEY MINTZER, trading as Toppers Drive-In Restaurant, and UNKNOWN OWNERS, Defendants Below, Appellees.

(*April* 10, 1961.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Daniel L. Herrmann* (of the firm of Herrmann and Duffy) for plaintiff below, appellant.

*Jackson W. Raysor* (of the firm of Tunnell and Raysor) for defendants below, appellees.

Supreme Court of the State of Delaware, No. 49, 1960.

BRAMHALL, J.:

The sole question in this case involves the competency of defendant Harvey Mintzer (hereafter defendant), one of the owners of the leasehold involved, to testify as to the fair market value of the leasehold.

On May 29, 1956, defendant and his wife leased from one Sidney Bicow and his wife a building containing approximately 525 square feet of space, located on the westerly side of U. S. 13, near Farnhurst, and on the southbound lane of

Route 13, near the junction of the western controlled highway leading from the Delaware Memorial Bridge. The term of the lease was for five years, beginning June 1, 1956, at a monthly rental of $175. Defendant installed an electric billboard sign, added an addition to the back for storage space and also installed a parking area, fully illuminated at night. He began operating the business as a luncheonette, known as Toppers Drive-In Restaurant, the latter part of June, 1956, and continued operating the restaurant until September 25, 1958, when an order of possession was entered in condemnation proceedings.

At the trial, defendant testified that the value of the lease for the 33 months remaining was $275 a month. Since the amount paid by defendant under the lease was $175 a month, defendant's loss was for the difference between $275 a month and $175 a month, or $100 a month, making defendant's total loss under his testimony $3,300.

Without objection, defendant testified as to the gross receipts and expenses from the beginning of the business in the latter part of June, 1956, up until the time of the vacation of the premises on September 25, 1958. On cross-examination, defendant testified that he knew two or three luncheonettes, one of which was approximately 300 yards away, but he did not know their exact rental price. He stated that some of his testimony was based upon figures, plus general knowledge as a result of ten years' experience in the food business, some of which was in a luncheonette in Center City.

The State produced two real estate experts, one of whom testified that the rental value of the property was $175 a month, the other somewhere between $150 and $175 a month. The Commission made an award to defendant in the sum of $1,650, which was exactly one-half of the loss which defendant claimed he sustained. The State appeals.

The State contends that the opinion of defendant as to the fair market value of the leasehold was inadmissible in evidence and that the jury should not have been permitted to consider it; that defendant's opinion was based solely upon income and expense figures and that defendant knew of no comparable rentals in the area; that none of this testimony had a bearing at all in determining the market value of the leasehold.

Generally speaking, the great weight of authority is to the effect that an owner of property may express an opinion as to its fair market value. Two reasons are given in support of this holding: (1) Necessity, that is, the frequent impossibility of producing other witnesses having the requisite knowledge upon which to base an opinion; (2) a presumption that the owner, being familiar with his property, knows at least in a general way what it is worth. The authorities supporting the first will be found in the cases cited in the *Annotation to* 37 *A. L. R.* 2d 967, § 4, p. 982, *Admissibility of Nonexpert Owner as to Value of Chattel.* See also 3 *Wigmore on Evidence,* Third Edition, § 716; 5 *Nichols on Eminent Domain* 18.4(2). The authorities for the second reason— which is the reason more frequently given—will also be found in the same annotation. See cases cited in 37 *A. L. R.* 2d 967, § 5 p. 982. See also *Ligon v. Brooks,* 39 *Del.* 113, 196 *A.* 200; *Fidanque v. American Maracaibo Co.,* 33 *Del. Ch.* 262, 92 *A.* 2d 311. Practically all the above authorities hold that there must be some familiarity on the part of the owner with the chattel as a predicate to the admission in evidence of the owner's estimate of value. See cases cited in *Annotation* found in 37 *A. L. R.* 2d 967, § 6, p. 984. Where it plainly appears that the owner has no knowledge of the value of the property in question, the presumption of knowledge is overcome and the opinion of the owner under such circumstances is generally inadmissible. See above citation, § 8, p. 985.

Both parties related the proof of defendant's damage to the fair market value of the leasehold. Fair market value has been defined in the case of *Wilmington Housing Authority v. Harris*, 47 *Del.* 469, 93 *A.* 2d 518, 521, as the "price which would be agreed upon by a willing seller and a willing buyer under usual and ordinary circumstances, without any compulsion whatsoever on the seller to sell or the buyer to buy". See *Board of Education v.* 13 *Acres of Land*, 50 *Del.* 387, 131 *A.* 2d 180. The question which we must decide is: Is the defendant a competent witness to testify as to the fair market value of his property?

We agree with the majority opinions above referred to that unless it is clearly shown that the owner has no knowledge of the value of his property, he should be permitted to testify as to its market value. The fact that in many instances such testimony is of little value goes to the weight of such tesimony and not to its admissibility. We think that the testimony given by defendant in this case shows a sufficient familiarity with conditions in general in the area and with the property itself in particular. Proof of value seems to be to permit proof of all the valid elements of value, including such facts as the owner would properly and naturally use to influence a prospective purchaser. See 4 *Nichols on Eminent Domain* 12.2(3). The evidence of defendant as to his gross income and expenditures was introduced without objection from the State. No objection is presented here as to its admissibility. In fact, the testimony of the State's experts was predicated, to some extent at least, upon such testimony.

We think that this testimony was properly admitted as one of the items which should be considered in determining the market value. We are also of the opinion that defendant's testimony showed such a general familiarity with his business, and with other similar types of business, as

to warrant the trial court to permit him, as owner of the leasehold, to testify as to its value.

It has been the general practice in this state in the case of injuries to an automobile to permit the owner thereof to testify as to its value prior to the accident. In the case of *Ligon v. Brooks, supra,* the Superior Court permitted the owner of an automobile to testify as to its fair market value, quoting with approval the rule set forth in *Chamberlayne's Modern Law of Evidence,* § 2143, that an owner may submit his estimate of the value of personal property where it may fairly be termed of the common, usual and ordinary kind by reason of special knowledge of the owner with respect to its value. The right of a managing director of an owner corporation to testify as to the value of certain property of the corporation was approved in the case of *Fidanque v. American Maracaibo Co., supra.* The State distinguishes these cases upon the ground that everyone has some knowledge of his automobile, but no such presumption exists in the case of a leasehold, and that the law should not therefore be extended to include leaseholds.

The general rule applicable to owners of personal property is also applicable to real estate. *Bateman v. Donovan,* 9 *Cir.,* 131 *F.* 2d 759, 764; *Watterson v. Knapp,* 35 *Cal. App.* 2d 283, 95 *P.* 2d 154, 157; *Baker Metropolitan Water & Sanitation Dist. v. Baca,* 138 *Col.* 239, 331 *P.* 2d 511, 512; *State Roads Comm. v. Novosel,* 203 *Md.* 619, 102 *A.* 2d 563; *Brate v. McDonald,* 95 *Ohio App.* 448, 120 *N. E.* 2d 748; *City of Houston v. Collins, Tex. Civ. App.,* 310 *S. W.* 2d 697, 704. See 3 *Wigmore on Evidence,* Third Edition, § 714; 5 *Nichols on Eminent Domain,* p. 137.

The case of *State Roads Commission v. Novosel, supra,* is a case similar in most respects to the present case. That case involved a lease for a restaurant and package liquor store, located on the highway two miles south of the Chesapeake Bay Bridge. In condemnation proceedings the lessees

were awarded $8,500 and the owners $22,000. The Court held that while business profits depended upon a number of factors and were therefore not a sure test of land value, this did not mean that no consideration was to be given it. The Court further stated that the owner "irrespective of other qualifications, is permitted to give his estimate of the value of his holdings". [203 *Md*. 619, 102 *A*. 2d 565] Here, it is unnecessary that we go as far as that case in upholding the right of the owner to testify as to the value of his possession, since in this case, there is substantial evidence to show a familiarity with his possession on the part of the owner and, to some extent at least, with other businesses of a similar nature in the general area.

The judgment of the court below is affirmed.