**Noah A. WARD and Katheryn Ward, Plaintiffs-Respondents,**

v.

**Jeff DECK and Lucille Deck, Defendants-Appellants.**

No. 8616.

Springfield Court of Appeals.

Missouri.

Sept. 8, 1967.

Turner White, White & Dickey, Springfield, for defendants-appellants.

John B. Newberry, Springfield, for plaintiffs-respondents.

HOGAN, Judge.

This action was brought by plaintiffs, as lessees, to recover damages for defendants' failure to put them in possession under a lease. Upon a jury trial, the plaintiffs recovered the sum of $11,022.00, which was reduced to $4,000.00 by remittitur in the trial court. The defendants have appealed, principally upon the ground that plaintiffs' evidence of damages is insufficient to support a judgment in any amount.

At the time here involved, the defendants were the owners of a parcel of realty located at the northeast corner of College and Grant in Springfield, Missouri. For several years prior to the execution of the lease in question, this corner had been occupied and used as a "package liquor store," i. e., for the sale of liquor in the original package, by

one of a chain of such stores known as the Brown Derby Package Liquor Stores. For some reason which does not appear of record, the Brown Derby vacated the premises prior to April 1965, and the defendants built a new building at the same location. It is clearly inferable that at the time the new building was being constructed the defendants expected Brown Derby to execute a new lease, for defendant Jeff Deck testified that when he and plaintiffs signed their lease "Mr. Ward * * * well understood * * * that I had been negotiating with Brown Derby on a lease." Nevertheless, no arrangements had been concluded with Brown Derby at the time the parties made the lease involved here, though subsequently the property was sold to Brown Derby by the defendants for $30,000.00, and is now used by Brown Derby as a package liquor store.

In this court, the defendants concede that the lease executed by them and plaintiffs was valid, and they concede that they breached their covenant to put the plaintiffs in possession. With the comment that defendants vigorously contested the case in the trial court, we state the background facts necessary to a reasonably clear understanding of the issues from a point of view most favorable to the result reached.

After the new building was practically complete, about the first of May 1965, plaintiff Noah A. Ward asked defendant Jeff Deck, with whom he was well acquainted, if the Brown Derby was "going back" in the new building. Defendant [1] replied that the former tenant had plans to do so, but if anything came up he would contact the plaintiff. A week or so later the parties again discussed the matter; the defendant expressed doubt that he and his former tenant could "get together" and asked the plaintiff if he was interested in having the new building for $350.00 per month. Plaintiff was unwilling to pay this

---

1. We refer to plaintiff Noah Ward and defendant Jeff Deck. Their wives were made parties, but seem to have taken no part in the transaction other than to sign the lease.

much, though he testified it was not necessarily "too high"; he offered to execute a lease on a percentage basis and defendant tentatively agreed. Mr. Ward then said he would "scout around" to see if he could find a liquor store for sale, because "you have to buy someone out in order to get a City license," and their discussion ended. Mr. Ward did locate a liquor store available for purchase and made a contract to buy it. Having done so, and believing that he had struck a bargain with the defendant upon which he could rely, plaintiff made a $500.00 partial payment on the liquor store and set a carpenter to work on the interior of the new building.

During the course of their negotiation, the parties had tentatively discussed a rental figure. Defendant, as indicated, originally wanted $350.00 per month, but plaintiff, who didn't want to "tie [himself] down," offered to pay four per cent of gross sales up to $5,000.00 per month and five per cent for "all over that." According to the plaintiff, at least, this seemed satisfactory to Mr. Deck. By Saturday, May 29, the plaintiff had "gotten pretty well involved," and advised defendant that he would have to have "something in writing and get it signed tonight or else as far as I'm concerned the deal on that building is off." Mr. Ward also told the defendant he would rather "forfeit that five hundred dollars * * * than * * * to go ahead and inventory that [liquor] store tomorrow and have all that stock and fixtures on my hand (sic) and then * * * get in the building with no lease." The defendant, who had been protesting that Brown Derby had offered $360.00 per month without air conditioning, then "kind of changed his attitude" and told Mr. Ward there was "no need in doing that," and consequently—this according to the plaintiff—the parties went over their previous oral agreements "step by step, just what [was] in the lease." On Saturday, May 29, the parties executed the following lease:

*"LEASE*

This lease made and entered into this 29th day of May, 1965, by and between Jeff Deck and Lucille Deck, hereinafter known as lessors and Noah A. Ward and Katheryn Ward hereinafter known as lessees.

"WITNESSETH: That lessees do hereby lease from lessors and lessors do hereby let to lessees a building located at the corner of College and Grant in Springfield, Greene County, Missouri. Said building being known as 653 College.

"This lease shall take effect on the above date and shall be for a period of one year.

"Lessees agree to pay lessors as consideration for this lease, 4% of the amount of gross sales made by lessees, on the premises, on the first $5,000.00 of gross sales and 5% of such gross sales above $5,000.00. It is agreed that such rent be paid at the end of each month of this lease.

"Lessors do hereby agree that lessees will use said premises for the sale of intoxicating beverages. Lessees agree that they will not assign this lease or sublet the premises without the written consent of lessors.

"Lessors agree that if the gross sales of lessees during the 12th month of this lease shall be $8,000.00 or greater that lessees shall have the option of extending this lease for an additional 4 years under the same terms and conditions as the original period.

"It is agreed that if the building be destroyed by fire or other casualty, so that it cannot be repaired, that either party may terminate this lease.

"It is agreed that lessees may remove all fixtures installed by them, at the time of termination of this lease.

"This lease shall be binding on the administrators, executors or other legal representatives of the parties.

"In witness whereof the parties have hereunto set their hands the year and day above written.
"/s/ Jeff Deck
"/s/ Lucille Deck
"/s/ Katheryn Ward
"/s/ Noah A. Ward"

On Wednesday, June 2, and before plaintiff had moved in, defendant announced, "We're going to have to change the lease," and indicated he would not abide by the terms. Plaintiff stated that he would have the lease checked to see if it was enforceable, and then left. As stated, the defendants now admit the validity of the lease and that they refused to allow the plaintiffs to occupy the premises.

■ The appellants have briefed and argued a number of points in this court. Inferentially, they have raised several complex and involved issues concerning the measure of plaintiffs' damages and the proper method of valuation of a leasehold, but a full discussion and resolution of all the questions they suggest is, in our view, unnecessary and probably imprudent upon the record presented. Manifestly, the plaintiffs' damage in this case is not readily susceptible to exact proof, but the case is not fairly comparable to Hough v. Jay-Dee Realty and Investment, Inc., Mo.App., 401 S.W.2d 545, as the defendants maintain. Not only did we restrict the Hough case to its peculiar facts; there the lessor's obligation was so nebulous—to build a "first-class restaurant"—that the plaintiffs themselves conceded the impossibility of any recovery based on the usual measure of damages. This case is much more nearly comparable to those cases in which there has been an interruption of an established business, and while we have the opinion that one measure of the value of a leasehold is the present worth of the difference between the rent contracted for and the current rental value of the premises, St. Louis County v. State Tax Commission, Mo., 406 S.W.2d 644, 652–653 [7–11]; Land Clearance for Redevelop. Corp. v. Doernhoefer, Mo., 389 S.W.2d 780, 784 [2, 3], we are unwilling to transmute any particular theory of real estate appraisal into a fixed legal principle by holding that there is one particular method of valuation which must be followed in this case. Of course, the method of valuation used must be one which is generally recognized and accepted, but we cannot confidently say, as the appellants urge, that it would be impossible for a properly qualified witness to state the amount of plaintiffs' loss as a lump sum, or that it would be improper for the jury to consider the plaintiffs' loss of anticipated profits, no matter what the state of proof might be. See Lee Shops, Inc. v. Schatten-Cypress Co., 6 Cir., 350 F.2d 12, 16–18. It is unnecessary to explore and compare the possible methods of proving damages which are or may be available to the plaintiffs, and we limit our opinion to a consideration of those essential questions necessary to a determination of the appeal in this court.

The other aspect of appellants' argument about the evidence of damages is, essentially, that plaintiffs failed to present sufficient factual data from which a jury could make a rational estimate of their loss, and in our opinion this point is well taken. Plaintiffs sought to establish their loss by the evidence of two witnesses, a Mr. Anderson and plaintiff Noah Ward himself. Mr. Anderson, the operator of a package liquor store in Springfield, Missouri, testified in substance that he had been in that business for two and one-half years, that he purchased the store from Mr. Ward, and that he had "observed" the differences in package liquor stores at various locations. "Your location," Mr. Anderson said, "* * * would be a very large percent of your volume of business." The witness had driven past the old building on the lessors' premises "twice a day for a couple of years * * * going to

and from work." For a "couple of years" Mr. Anderson had been looking over other locations in Springfield, and he had talked to five or six people about locating a second store if he could get a volume of business which would justify its establishment, but had recently "kind of given up on it." This witness was then asked if, based on his experience, his familiarity with the old building at College and Grant, and his investigation of possible locations for places to establish a new store, he had an opinion of the value of plaintiffs' leasehold, taking into consideration the rental provisions of plaintiffs' lease. The witness answered that in his opinion a lease "like that at that location would be worth about five thousand dollars."

On cross-examination, Mr. Anderson stated that his dollar figure represented "the lease and the location of the building," but he didn't think it was related to the rental; he had, however, taken the probable rent into account. The course of his testimony on cross-examination, which we need not detail here, makes it appear that Mr. Anderson based his opinion of the value of plaintiffs' leasehold largely upon the volume of sales which, in his judgment, would be made at the particular location in question, taking into consideration the fact that a new building had been built.

■ The appellants attack this testimony on two grounds. First, they say that Mr. Anderson was not qualified by any standard to give an opinion, and further they argue that the figure he gave is purely speculative because he was not able to, or at least did not, state any rational basis for his estimate. We are inclined to agree on both counts, though we could not say, on the record before us, that Mr. Anderson could not have qualified, had his familiarity with the subject matter been more clearly shown. Necessarily, the evidence of damages in this case must rest upon opinions or estimates which are, in the traditional sense, somewhat speculative, but it is well established that the value of the use, or

rental value, of land may be proved by the opinion evidence of witnesses acquainted with the property and the facts bearing on its use. 31 Am.Jur.2d Expert and Opinion Evidence, § 143, p. 697. The testimony of a witness as to the value of an interest in land should be rejected, however, where the basis for a test as to its reliability is not furnished by a statement of facts on which it is based, or where the basis of fact does not appear to be sufficient. 32 C.J.S. Evidence § 546(117), pp. 436–438. The weakness of Mr. Anderson's testimony, aside from his qualification, is that he testified to no actual facts which presented data upon which to base a rational estimate of the value of plaintiffs' leasehold. Though the fact situations involved in such cases as Ramsay v. United States (W.D. Mo.), 55 F.2d 333, 334 [3]; Yaffe v. American Fixture, Inc., Mo., 345 S.W.2d 195, 200 [5, 6], and Arkansas State Highway Commission v. Stanley, 234 Ark. 428, 353 S.W.2d 173, 174–175 [2], 4 A.L.R.3d 749, 753–754, are widely divergent from the facts at hand, the principles announced therein are applicable, and in our opinion Mr. Anderson's testimony was not sufficient to establish the amount of plaintiffs' loss.

In addition to Mr. Anderson's testimony, the plaintiffs had the evidence of plaintiff Noah Ward himself concerning the value of their leasehold. Mr. Ward testified that at one time he had operated a package liquor store for about 27 months. He stated that he sold this business to Mr. Anderson, and basing his opinion upon his experience in operating the business Mr. Anderson now owned and a "little checking" he had done, Mr. Ward estimated the value of the leasehold to be "at least over five thousand dollars a year" to him. Upon request of counsel, the trial court struck the answer and Mr. Ward testified that the value of the leasehold was $5,000.00 a year, without the qualification "to me." On cross-examination, Mr. Ward said that he arrived at this figure "by the volume I used to do in the small store," but added that he

"didn't know" what a reasonable rental for the property at College and Grant would be. Mr. Ward also testified that he was not familiar with the terms of the former tenant's lease and did not know what the rent or volume of business had been. There is no evidence in the record indicating that Mr. Ward's liquor store was comparable or dissimilar to the operation he proposed to undertake. It must be borne in mind that Mr. Ward never actually occupied the premises in question and gave no testimony indicating the size of the business he proposed to establish.

 The respondents seek to justify the admission of Mr. Ward's testimony on the ground that the ownership of the leasehold in itself qualified him to express an opinion as to its value. In general, it is true that the owner of real property or an interest therein may give his opinion of its value, and his estimate is received in evidence notwithstanding the fact that he is not an expert, 31 Am.Jur.2d Expert and Opinion Evidence, § 142, p. 696, but the admissibility of such evidence rests upon the assumption or a record showing that he is particularly familiar with the property and knows the usages to which the property is adapted, Shelby County R–IV School District v. Herman, Mo., 392 S.W.2d 609, 613 [6–10]; State ex rel. Smith v. 0.15 Acres of Land, etc., 3 Storey 372, 53 Del. 372, 169 A.2d 256, 258–259 [4, 5]; Dawson v. City of Lincoln, 176 Neb. 311, 125 N.W.2d 908, 910, 911 [1, 2] [3], and when this assumption of special knowledge is negated by the owner's own testimony, his opinion loses its probative value and should be rejected. United States v. Sowards, 10 Cir., 370 F.2d 87, 92 [15–17]; State ex rel. Smith v. 0.15 Acres of Land, etc., supra, 53 Del. 372, 169 A.2d at 258 [1]; 31 Am.Jur. 2d Expert and Opinion Evidence, § 142, pp. 696–697. Though Mr. Ward was the owner of the leasehold in question, he had had no experience in using the premises as a location for a package liquor store, and his previous business was not shown to have been comparable in any respect to that which he was undertaking to establish. Further, though Mr. Ward at one point denied this, he seems to have based his opinion of the value of the plaintiffs' leasehold upon its value to him as an individual. We have the opinion that, as his testimony developed, Mr. Ward's opinion had no probative value and should have been rejected by the trial court. United States v. Sowards, supra, 370 F.2d at 92 [15–17].

For the errors noted, the cause is reversed and remanded for a new trial on the issue of damages only.

STONE, P. J., and TITUS, J., concur.