OPINION OF THE COURT
FUENTES, Circuit Judge:
Marcus Wiseman (“Wiseman”) appeals his conviction and sentence for bribery, conspiracy, and wire fraud in violation of 18 U.S.C. §§ 215(a)(2), 371, and 1343. Following a jury trial, he was sentenced to a forty-one month term of imprisonment. Wiseman remains free, however, pending the disposition of this appeal. For the reasons set forth below, we will affirm the judgment of the District Court in all respects.[1]
I.
Because we write exclusively for the parties, we only discuss the facts to the extent necessary for resolution of the case.
Wiseman has extensive experience in home mortgage lending, having worked in the industry for at least the last decade. During that time, he served in a variety of positions, ranging from broker to underwriter. Further, he both operated his own firm and managed branch offices of national lending institutions.
Beginning in 2002, Wiseman procured several fraudulent mortgage loans for Jeffrey Martin (“Martin”) and Raymon Harris (“Harris”), both of whom were close friends and former colleagues. Martin and Harris obtained at least twenty-four fraudulent loans over a period of approximately six years, four of which were assisted by Wiseman. Following a jury trial, Wiseman was convicted for his role in connection with the fraudulent transactions in which he assisted. On appeal, Wiseman challenges the admissibility of opinion testimony offered by two lay witnesses. He also challenges the appropriateness of his sentence, specifically in regard to the adjustments for the amount of loss suffered and for his role in the offense.
II.
We first address Wiseman’s contention that he suffered substantial prejudice from non-disclosed expert witness testimony. He argues that the trial testimony offered by two lay witnesses was inappropriate because the testimony involved specialized knowledge and therefore should have been admitted as expert testimony. Wiseman’s claim is based on three questions asked by the Government: one posed to Martin and *198 two directed to Shelly Beck (“Beck”). We review the District Court’s decision to admit lay opinion testimony for abuse of discretion. United States v. Hoffecker, 530 F.3d 137, 170 (3d Cir.2008).
At trial, the Government established that Martin grew-up in Pittsburgh, that he had worked in the area for at least ten years, and that he was familiar with the real estate market, particularly in a neighborhood known as Polish Hill. One property owned by Martin, which he later refinanced with Wiseman’s assistance, was located in Polish Hill. Martin testified that he submitted an appraisal concerning this property to Wiseman, on which Martin falsified both the original purchase price and current value of the property.[2]
The Government subsequently asked Martin whether, “based upon [his] experience in the Pittsburgh area,” the increased value represented on the appraisal was “common.” Over Wiseman’s objection, the District Court permitted Martin to answer, reasoning that he did not need to be a trained appraiser, and therefore qualify as an expert witness, to answer the question but could do so “based on his experience.” Martin then explained that the increase in value would have been “[v]ery uncommon,” and that he had “never seen a property increase like that.”
Wiseman also objected to opinions offered by Beck, the national underwriting manager for National City Corp. At trial, Beck summarized her thirty-four years of experience in the mortgage industry and described the training program in which employees like Wiseman were required to participate. Further, Beck analyzed two loan applications that had been submitted by Martin and which Wiseman had played a significant role in originating, processing, and approving. Beck testified that the applications contained several significant and conspicuous inconsistencies.
The Government solicited Beck’s opinion concerning what she would have done if she had been presented with a loan application with similar representations of sale price and present value. The Government asked: “Now, if you had all this information as indicated in this chart, that you had done if you were associated with both of these loans and had this information, what would you do with that loan?”[3] The Government later continued: “Now, let’s assume that as an underwriter or bank employee you have this information in front of you. What, if anything, do you [do] with that loan file ... ?” And concerning the other property, the Government asked, “Now, I’ll ask you to assume for a moment that [the property] is in one of the most distressed areas.... With that assumption in mind, what do you do with the ... loan file?”
The District Court overruled each of Wiseman’s objections to the Government’s questions, concluding that the opinion offered by Beck was not expert testimony; rather, the District Court reasoned that “this is what she does for a living.” In response to each of the questions, Beck confirmed that she would not have approved the loans, would have been suspicious of fraud, and would have referred the matter to an investigative unit of the company.
*199 III.
As an initial matter, we disagree with Wiseman’s contention that the opinion testimony offered by Martin involved specialized knowledge, governed by Fed. R.Evid. 702 (“Testimony by Experts”). Indeed, it has been long and widely recognized that, “[a]s a general rule, the opinion of a landowner as to the value of his land is admissible without further qualification because of his close relationship with the land.” District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land, 534 F.2d 337, 339 (D.C.Cir.1976); see also, e.g., LaCombe v. A-T-O, Inc., 679 F.2d 431, 433 (5th Cir.1982) (“the owner of property is qualified by his ownership alone to testify as to its value”); United States v. 79.20 Acres of Land, More or Less, 710 F.2d 1352, 1357 (8th Cir.1983) (a landowner’s “testimony as to the value of his land is admitted in federal courts without further qualification.” (internal quotations marks and emphasis omitted)); State ex rel. Smith v. 0.15 Acres of Land, More or Less, 169 A.2d 256, 258 (Del.1961) (“Generally speaking, the great weight of authority is to the effect that an owner of property may express an opinion as to its fair market value.”). Martin owned the property in question. Wiseman has not identified, and we are not otherwise aware of, any authority requiring that, in a circumstance like this, the general rule does not apply and that Martin must first have been qualified as an expert witness to say what he thought his own property was worth. We therefore cannot say that the District Court abused it’s discretion in allowing Martin’s opinion testimony to come into evidence, even if his testimony may have benefited from his professional expertise.
The testimony delivered by Beck, however, is less straightforward. We have observed that the essential difference between lay and expert opinion testimony is that “a qualified expert may answer hypothetical questions.” Teen-Ed, Inc. v. Kimball Int’l Inc., 620 F.2d 399, 404 (3d Cir.1980). Here, Beck arguably did answer hypothetical questions concerning facts that were not obtained firsthand. Even if the opinion testimony delivered by Beck was erroneously admitted, however, we believe that the oversight at most constitutes harmless error. Beck carefully analyzed the discrepancies contained in the loan applications and clearly identified the troublesome nature of the documents. Further, Martin had already testified to the bogus nature of the loans, and Wiseman did not object to the overwhelming majority of Beck’s testimony concerning the flaws contained in the documents. Beck’s opinion that she would “call the authorities,” or that the documents, “screamed fraud,” was not necessary to substantiate the Government’s case against Wiseman and did not prejudice him. Rather, this amounted to harmless error. United States v. Ali, 493 F.3d 387, 392 n. 3 (3d Cir.2007) (noting that “in light of the overwhelming evidence presented at trial, any error would have been harmless”); United States v. Long, 574 F.2d 761, 772 (3d Cir.1978) (“The evidence of guilt in this particular case is so substantial that the legal error may be considered harmless.”).
IV.
Wiseman also challenges the appropriateness of his sentence. He argues that (1) the District Court erred in the calculation of the amount of loss under United States Sentencing Guidelines Manual (“U.S.S.G.”) § 2B1.1; (2) he played a “minor role” in the commission of the crime consistent with U.S.S.G. § 3B1.2; (3) he did not occupy a “position of trust” as contemplated in U.S.S.G. § 3B1.3; and (4) the sentence imposed was unreasonable. We review the District Court’s factual findings concerning amount of loss and *200 role in the offence for clear error. United States v. Jimenez, 513 F.3d 62, 85-86 (3d Cir.2008) (applying clear error standard of review for calculation of loss); United States v. Perez, 280 F.3d 318, 351 (3d Cir.2002) (applying clear error stand of review for minor role adjustments). A finding is clearly erroneous “if the reviewing court is left with the definite and firm conviction based on all the evidence that the trial court made a mistake.” Perez, 280 F.3d at 351. We apply a de novo standard of review concerning the finding that a position of trust existed. United States v. Thomas, 315 F.3d 190, 204 (3d Cir.2002).
First, Wiseman argues that the amount of loss should be calculated at no more than $375,861, which was the amount calculated for restitution purposes. Pursuant to U.S.S.G. § 261.1, if the amount of loss figure rises above $400,000, a sentencing court adds two levels to the defendant’s guideline range. The District Court found that the loss exceeded the amount ordered for restitution, and adjusted Wise-man’s guideline range accordingly. Wise-man’s argument that this determination was erroneous is unconvincing. A district court “need only make a reasonable estimate of the loss.” United States v. Ali, 508 F.3d 136, 145 (3d Cir.2007) (internal quotation marks omitted). The restitution figure claimed by Wiseman includes the amount of loss on only two of the four properties; loss on the others was not factored in the restitution because there was either no loss on the property at the date of sentencing or loss was exceedingly difficult to calculate. For sentencing purposes, however, “the loss need not be determined with precision.” United States v. Evans, 155 F.3d 245, 252 (3d Cir.1998). It does not follow that simply because the amount of loss on a property was undetermined that there is no loss at all. The question, rather, is whether it was clear error for the District Court to believe that the combined loss on the two properties not included in the restitution figure would be greater than $24,139. There was more than a reasonable basis to believe that the losses on those properties not included in the restitution figure would be equivalent to the others — and thus bring the combined loss total well above the $400,000 benchmark needed to satisfy § 261.1.
Second, Wiseman claims that pursuant to U.S.S.G. § 3B1.2 he should have received a two-level reduction from his guideline range for playing a “minor role” in the offense. Wiseman argues that he was not a key player because Martin and Harris obtained fraudulent loans from several other lending sources without his assistance, he was unaware of the full extent of Martin and Harris’s scheme, and he did not actually create any of the falsified loan documents.
We have stated that “the culpability of a defendant ... must depend necessarily on such factors as the nature of the defendant’s relationship to other participants, the importance of the defendant’s actions to the success of the venture, and the defendant’s awareness of the nature and scope of the criminal enterprise.” United States v. Headley, 923 F.2d 1079, 1084 (3d Cir.1991) (internal quotation marks omitted); see also United States v. Isaza-Zapata, 148 F.3d 236, 238-39 (3d Cir.1998) (“[Ajpplication [of § 3B1.2] is heavily dependent on the facts of a particular case, and ... the reduction is available for a defendant whose role in the offense makes him substantially less culpable than the average participant.”) (citing U.S.S.G. § 3B1.2 cmt. 3(C)). Further, “district courts are allowed broad discretion in applying this section, and their rulings are left largely undisturbed by the courts of appeal.” Isaza-Zapata, 148 F.3d at 238.
The District Court concluded that Wise-man was not a minor participant, and his argument here fails to establish that he *201 was “substantially less culpable than the average participant.” But for the assistance provided by Wiseman, Martin and Harris would have been unable to obtain the loans that they did from Guaranty and National City banks. Even if Wiseman was unaware of the extent of the full fraud committed by Martin and Harris, he played an exceedingly instrumental role in processing, underwriting, and approving the loans necessary to the portions of the fraud in which he did participate. Wise-man, of course, was charged, convicted, and sentenced only in connection with the loans in which he was directly involved. We therefore cannot say that the District Court committed clear error in determining that Wiseman was not entitled to a reduction in his offense level for playing a minor role.
Third, Wiseman argues that the District Court should not have imposed a two-level enhancement in his guideline range for the abuse of a “position of trust” pursuant to U.S.S.G. § 3B1.3. He claims that he did not occupy a position of trust. Rather, Wiseman explains that it was his subordinate employees who were responsible for the loan approval process and not Wiseman personally.[4]
We have identified three factors for determining whether a position of trust exists: “(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in the defendant vis-a-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position.” United States v. Thomas, 315 F.3d 190, 204 (3d Cir.2002) (citing United States v. Iannone, 184 F.3d 214, 223 (3d Cir.1999)); see also U.S.S.G. § 3B1.3 cmt. 1 (noting that a position of trust is “characterized by professional or managerial discretion”). Further, we have said that “the primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong.” United States v. Craddock, 993 F.2d 338, 341 (3d Cir.1993) (internal quotations omitted).
Wiseman’s argument that the fraud was actually the result of either the carelessness of his subordinate employees or the ineffective oversight of his superiors is unconvincing. Although persons holding positions of trust are usually “subject to significantly less supervision,” the guidelines do not require an employee be subject to no supervision whatsoever. U.S.S.G. § 3B1.3 cmt. 1. Although Wiseman may have been inadequately supervised and he may have had an inappropriate degree of independence, this does not mean that he was not in a position of trust. Nor does it follow that Wiseman could not occupy a position of trust simply because he had subordinate employees working on several aspects of the loan applications.
The record before us contains overwhelming evidence that Wiseman occupied a position of trust at both Guaranty and National City banks. As an underwriter, Wiseman was charged with protecting the interests of the bank and establishing the first line of defense against fraud. When he became a branch manager at Guaranty, he was permitted to both originate and underwrite his own loans. Further, Wise-man was permitted to hire his own em *202 ployees when he became the underwriting manager at National City, a position in which he appears to have been unsupervised. We have held on several occasions that position-of-trust enhancements were appropriate for bank executives and branch managers who possessed the authority to approve loan applications. See, e.g., United States v. McMillen, 917 F.2d 773, 776 (3d Cir.1990); United States v. Lieberman, 971 F.2d 989, 993 (3d Cir.1992); see also U.S.S.G. § 3B1.3 cmt. 1 (noting that “this adjustment ... applies in the case of ... a bank executive’s fraudulent loan scheme____”). Because we are confident that Wiseman occupied a position of trust within the meaning of U.S.S.G. § 3B1.3, we conclude that the two-level enhancement was within the discretion of the District Court.[5]
Finally, Wiseman argues that the sentence imposed by the District Court was unreasonable. His contention, however, rests exclusively on his argument that the District Court erred in its (1) calculation of loss, resulting in a two-level sentencing guideline enhancement; (2) denial of a two-level sentencing guideline reduction for a minor role in the offense; and (3) finding that Wiseman occupied a position of trust, resulting in a two-level sentencing guideline enhancement. As noted above, none of these claims have merit. Accordingly, we conclude that Wiseman’s argument that his sentence is unreasonable is also without merit.
V.
For the foregoing reasons, we will affirm the District Court in all respects.

. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

. The appraisal listed the 1995 purchase price of the property as $80,000 when in fact it was only $38,000. Further, it stated that the value of the property had increased to $421,000 in 2002, only seven years later.

. In response to Wiseman's objection, the Government rephrased the question: "Let’s say that you were associate with both of these loans and you had had — had this information that’s on the chart with this switcheroo and these valuations. What do you do with the loan file ...?"

. Wiseman argues that he was not the loan processor on any of the loans, that he was the underwriter on only one of the loans, and that he was the loan officer on only one of the loans. He claims that "the procedures of loan originating, processing and underwriting ... did not depend on Wiseman and Wiseman alone.” Rather, Wiseman argues that because his approval was always subordinate to others, which he refers to as a system of “checks and balances,” he could not have occupied a position of trust.

. We do not comment on whether Wiseman abused his position of trust because Wiseman has not placed that issue before this Court.