# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| IN RE: CCDE SENIOR LIVING LLC, | : | |
| *et al.* v. BOARD OF ASSESSMENT | : | C.A. No. N23A-11-004 KMM |
| REVIEW APPEALS | : | (Consolidated) |
| | : | |
| | : | |
| | : | |

Date submitted: November 19, 2024
Date decided: February 11, 2025

## MEMORANDUM OPINION

*Appeal from Board of Assessment Review – **Affirmed***

Peter L. Frattarelli, Esquire (*argued*), Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, *attorney for appellants*.

William C. Martin, Esquire (*argued*), Judith H. Mitchell, Esquire, New Castle County Office of Law, 87 Reads Way, New Castle, DE 19720, *attorneys for Appellee*.

**Miller, J.**

# I. *Introduction*

This consolidated appeal involves 41 tax appeals filed by nine different commercial property owners (the "Taxpayers"), which among them own 30 different commercial tax parcels. The Taxpayers appealed certain New Castle County Office of Finance, Assessment Division's (the "Assessment Office") real property tax assessments for tax years 2021, 2022, and 2023, to the New Castle County Board of Assessment Review (the "Board"). The Taxpayers knew the Board required an appraisal, but none submitted an appraisal with their appeals. Rather, each appeal attached data prepared by their tax service provider, Ryan, LLC ("Ryan").

After the appeals to the Board were filed, the Assessment Office indicated that it was obtaining an appraisal for one of the larger parcels. Approximately a year later, the Assessment Office advised the Taxpayers that it was not proceeding with an appraisal. Each Taxpayer received a deficiency notice and given ten days to cure. While two Taxpayers later submitted appraisal reports outside the cure period, no other Taxpayer submitted an appraisal. The Appeals were set for a hearing before the Board.

After a continuance at the Taxpayers' requests, the Board held a deficiency hearing. At that hearing, the Taxpayers told the Board that the Ryan data was submitted for settlement purposes, and that they did not intend to rely on this

1

information at a merits hearing. The Taxpayers requested another continuance to provide time to submit appraisal reports.

The Board denied the continuance requests. It found that none of the appeals were supported by "competent evidence of overvaluation" and dismissed the appeals.

In this appeal, the Taxpayers change course and argue that the Ryan data is competent evidence and therefore, they are entitled to a merits hearing. The Taxpayers also argue that appraisals are not required, but if appraisals are to be submitted, the deadline for submission has not passed, and therefore, the appeals are not deficient. For these reasons, the Board's decisions must be reversed.

The Board has a statutory obligation to hear tax assessment appeals. The Board also has statutory authority to make rules. On appeal to the Board, a taxpayer has the burden to present "competent evidence" of "substantial overvaluation." Board rules require that materials in support of substantial overvaluation be attached to the appeal form.

The Taxpayers made a tactical decision not to attach competent evidence of substantial overvaluation to their appeals. They conceded as much to the Board. The Taxpayers are not entitled to a merits hearing.

Under Board rules, a taxpayer may seek an extension of time to submit an appraisal report. None of the Taxpayers followed that process. The Board did not abuse its discretion in denying a further continuance.

At the deficiency hearing, the Taxpayers argued, for the first time, that based on the ruling in *In re Delaware Public Schools Litig.,* the Board's rules requiring a 1983 valuation violates the True Value Statute. The Taxpayers requested permission to file further submissions on this legal issue. Because the Board had already ruled on the appeals, it considered this request as a motion for reconsideration, which it denied. In this appeal, the Taxpayers argue that the Board's rules requiring a 1983 valuation are invalid and unenforceable. The Taxpayers, however, make no substantive argument in support of this contention.

Finally, the Taxpayers assert that the Assessment Office violated their due process rights when it inappropriately influenced the Board in deciding that the appeals were deficient. The Taxpayers raise this argument for the first time in this Court, which it is not permitted to do.

The Board's decisions were not arbitrary or capricious or an abuse of discretion. Because the Board's determinations were not clearly wrong, the Board's decisions are **AFFIRMED**.

## II.     *Procedural and Factual Background*

### A.     *Appeals to the Board*

For tax years 2021[1], 2022[2], and 2023[3], the Assessment Office used an indefinite-base-year method of assessment utilizing 1983 property values. After receiving a tax assessment for the applicable years, the Taxpayers timely filed appeals to the Board. At the Board level, the appeals were addressed in four groups: appeals for the property located at (1) 1912 Marsh Road (the "Forwood Appeals"); (2) multiple other locations (the "Various Appeals"); (3) 919 Market Street (the "Market Street Appeals"); and (4) 700 King Street (the "King Street Appeals" and collectively, the "Appeals").

The Forwood Appeals were filed on March 14, 2021, and March 12, 2022.[4] The Various Appeals were filed on March 11, 2021,[5] March 14, 2022,[6] and March 13, 2023.[7] The Market Street Appeals were filed on March 14, 2021, and March 10,

---

[1] New Castle County's fiscal year runs July 1 to June 30. Thus, the 2021 tax year covers July 1, 2021 to June 30, 2022. Two appeals were filed with the Board in March 2021.

[2] Thirty-seven appeals were filed with the Board in March 2022 (many of which were amended appeals filed in 2021).

[3] Two appeals were filed with the Board in March 2023. R. 988-93.

[4] R. 989.

[5] R. 1117.

[6] R. 1147, R. 1186, R. 1226, R. 1266, R. 1306, R. 1346, R. 1386, R. 1426, R. 1466, R. 1506, R. 1546, R. 1586, R. 1626, R. 1666, R. 1706, R. 1740, R. 1780, R. 1820, R. 1860, R. 1900, R. 1914, R. 1968, R. 1982, R. 2036, R. 2050, R. 2104, R. 2137, R. 2165, R. 2195, R. 2222, R. 2251, and R. 2278.

[7] R. 2325.

4

2022.[8]  The King Street Appeals were filed March 14, 2021, March 14, 2022, and March 13, 2023.[9]

Appeals to the Board must be submitted on the Board-provided form.  That form includes a section for the taxpayer to indicate which approach(es) it is using:

☐ A.  Comparable Sales or Market Approach

☐ B.  Income Approach, and/or

☐ C.  Cost Approach.[10]

For each approach selected, the taxpayer is instructed to attach its supporting evidence.  The form states:

**ONLY APPRAISALS RELATING TO FAIR MARKET VALUE AS OF JULY 1, 1983 WILL BE CONSIDERED.**

**NOTICE:  All material substantiating your reasoning <u>must</u> accompany this form (e.g., construction costs, photographs, deeds, sales history, analysis of comparable properties, appraisal reports, income and expense data, etc.).  All supporting evidence must be appended to this form to be considered by the Board.  In addition, if you intend to rely at the hearing on any appraisal or other document to support your claim of value, the person who prepared the document must appear at the hearing.**

Each of the Appeals checked the "Comparable Sales or Market Approach" and "Income Approach" boxes.[11]  Attached to each Appeal was material prepared

---

[8] R. 173.

[9] R. 503.

[10] *See* R. 758; *1313 Owner LLC v. New Castle Cnty. Off. of Fin.*, 2020 WL 499227, at *11 (Del. Super. Jan. 30, 2020) (noting that the three recognized approaches are the sales comparison approach, the cost approach, and the income approach).  *See also Seaford Assocs., L.P. v. Bd. of Assessment Rev.*, 539 A.2d 1045, 1050 (Del. 1988) (ruling that the income approach should not be accepted as the sole method used to determine fair market value; it must be tested against one of the two remaining approaches).

[11] *See* R. 758.

by Ryan, that included spreadsheets, tables, and other information (the "Ryan Materials"). None of the Appeals included an appraisal.

After the Appeals were filed, the Assessment Office sent each Taxpayer a letter acknowledging its receipt.[12] The form letter states that if any of the four boxes are checked, the taxpayer must submit the information/documents within ten days, or the appeal may be dismissed.[13] The listed deficiencies are:

☐ Your estimate of the property's **July 1, 1983** fair market value not provided

☒ Ten (10) copies of appeal application form not provided

☒ Ten (10) copies of supporting documentation not provided (e.g., letter)

☐ Signature page 4 needed on all 10 copies of appeal form

For most Appeals, none of the boxes were checked, but for others, some were checked.

**B.** ***The Taxpayers' post-appeal communications with the Assessment Office***

The Assessment Office, through Denzil Hardman, communicated with the Taxpayers through Ryan. On February 15, 2022, Mr. Hardman informed Ryan that based on a review of several Appeals, deficiencies were identified as follows:

---

[12] R. 198, R. 583, R. 1145, R. 1184, R. 1224, R. 1264, R. 1304, R. 1344, R. 1384, R. 1424, R. 1464, R. 1504, R. 1544, R. 1584, R. 1624, R. 1664, R. 1704, R. 1738, R. 1778, R. 1818, R. 1858, R. 1898, R. 1912, R. 1980, R. 2048, R. 2102, R. 2135, R. 2193, R. 2249, and R. 2323.
[13] *Id.*

- In several of the Appeals, the Taxpayer's 1983 value, as indicated on the appeal form, did not match the value reflected in the Ryan Materials.

- The "agent" for the Taxpayer did not comply with Board rules requiring the agent be an attorney, the owner, or an employee of the owner.

- The appeal forms checked the Income and Sales/Market approaches, but the Ryan Materials did not include Sales/Market information, and if the Income Approach is being relied upon, it must be combined with another acceptable approach.

Mr. Hardman listed the Appeals that were reviewed and set a deadline of April 30, 2022, for the submission of additional information.[14]

Ryan submitted an amended Tax Year 2021 appeal for Market Street to Mr. Hardman on March 21, 2022.[15] Mr. Hardman responded, stating:

> Our plan is to review all the appeals that you are sending updated information/documentation on at one time. I gave you until the end of April to provide information on all of them, so we will review all of them once that date passes or when you inform me that all your additional information is sent and you will be sending no more.

Ryan updated additional Appeals and advised Mr. Hardman on April 27, 2022, that the process was complete.[16]

---

[14] R. 1086-88.
[15] R. 1086.
[16] R. 1084-85.

On May 17, 2022, Mr. Hardman advised Ryan:

> Just to let you know what our process for these appeals will be…. We are in the process of having an appraisal done on one of the larger parcels. Once we see where our appraisal falls in comparison to your requested value and our current assessed value we will be in touch with you to discuss.[17]

Mr. Hardman indicated that he was still working on obtaining approval for an appraisal, but it would be for the Forwood property.[18]

In September, Mr. Hardman advised Ryan that the Assessment Office was waiting for its vendor to complete the appraisal.[19] In response to Ryan's inquiry on the "status or schedule for resolving" the remaining Appeals, Mr. Hardman said he wanted to "wait to see how [the Forwood] appraisal goes" before deciding on a course of action for the remaining Appeals.[20]

Five months later, the Assessment Office notified Ryan that the Forwood Appeals were deficient.[21] The February 13, 2023 letter identified the deficiencies and provided Forwood ten days to cure:

> 1) To the extent the appellant was attempting to provide appraisals, the documents were not prepared by Delaware-licensed appraisers, as required under Board of Assessment Rule Art. VIII, Section 3(c).
>
> 2) The documents attached are not appraisals under USPAP.
>
> 3) Jeff Iannuzzi and Cutchin Powell are employees of Ryan, LLC, and not the appellant. Accordingly, neither can testify as a fact witness on

---

[17] R. 1083.
[18] R. 1081.
[19] R. 1080.
[20] R. 1079.
[21] R. 1068.

8

behalf of the appellant under Board of Assessment Rule Art. VI, Section 7(a).

4) The documents attached to the appeals are the only documents provided by the appellant to support the assertion of a substantial overvaluation of the subject property. There is no admissible evidence supporting the appeal.[22]

Also on February 13, 2023, Mr. Hardman advised Ryan by email that the Forwood Appeals would be scheduled for a Board hearing in April.[23]   Ryan responded: "Thanks for the update.  From our last call, do you still anticipate a settlement discussion after receipt of your appraisal report?..."[24]   To which Mr. Hardman responded: "No, not at this time."[25]

On February 14, 2023, Ryan emailed Mr. Hardman:

… do you still plan to get a third-party appraisal completed for [the Forwood] property/appeal?  Or if not, is your plan for us to be able to amend our prior administrative filings (or supplement future court filings) with our own third-party appraisals?

If the latter, I'd anticipate needing more time than the 24th (as requested in your attached letter).

The next day, Mr. Hardman advised Ryan that if the Appeals were not supplemented within the provided time-period, they would be placed on the April docket as "deficient filings and you may take the issue up with the board."[26]  Ryan

---

[22] R. 1068.
[23] R. 1078.
[24] R. 1077.
[25] Id.
[26] R. 1076.

9

asked to discuss the deficient filings and an extension of time. Mr. Hardman responded that he could not give legal advice and referred Ryan to the Board rules.[27]

On May 30, 2023, the Assessment Office sent Market Street, King Street, and the Various Taxpayers deficiency letters.[28] These Appeals suffered from the same decencies identified in 1), 2), and 4) of Forwood's deficiency letter. They were given ten days (to June 13, 2023) to cure the deficiencies.[29]

## C.     *The April and July hearings*

The Forwood Appeals were scheduled for a deficiency hearing on April 19, 2023. At the hearing, Forwood advised the Board that it was working on an appraisal and requested a continuance, which the Board granted.[30] Forwood's merit hearing was scheduled for July 19, 2023.[31]

On June 23, 2023, Forwood requested an administrative continuance of the July hearing to allow time to submit an appraisal report, which was also granted.[32] Forwood never submitted an appraisal report. The Forwood Appeals were scheduled for a deficiency hearing on October 18, 2023.

---

[27] R. 1075.
[28] *See* R. 199, R. 813, R. 1146.
[29] R. 199.
[30] R. 990.
[31] R. 1096 (Forwood's counsel: "The July 19, 2023, date is the first scheduled hearing on the merits for these appeals.").
[32] R. 1099, R. 1101, R. 990.

The Market Street Appeals and King Street Appeals were scheduled for a hearing on July 19. Both were granted an administrative continuance. On July 19, 2023, Market Street submitted an appraisal report to the Board.[33] On September 22, 2023, King Street submitted an appraisal report to the Board.[34] Both Appeals were scheduled for a deficiency hearing on October 18, 2023.

Just like the other Taxpayers, the Various Taxpayers' July hearing was continued[35] and the Various Appeals were scheduled for a deficiency hearing on October 18, 2023. On September 22, 2023, the Various Taxpayers requested an additional administrative continuance, or in the alternative, a continuance based on "extraordinary circumstances." The Chairperson denied the request on October 9, 2023.[36] None of the Various Taxpayers submitted an appraisal report.

## D.    *The October Deficiency Hearing*

### 1.    *The Forwood Appeals*

At the October 18, 2023 deficiency hearing, the Forwood Appeals were addressed first. Counsel for each side presented their arguments.

The Assessment Office argued for dismissal of the Appeals because they were not supported by any competent evidence. The Assessment Office asserted that the

---

[33] R. 174, R. 238-501.
[34] R. 828-987.
[35] R. 1104.
[36] *Id.*

Ryan Materials were inadmissible under Board rules because they were not appraisals nor were prepared by an appraiser.[37] In support, the Assessment Office noted that the Ryan Materials did not "clearly and accurately" disclose assumptions or hypothetical or limiting conditions, explain the information analyzed, or contain a discussion of the reasons for the conclusions.[38] While the Ryan Materials purported to include an Income Approach analysis, it was not properly supported by the Sales or Cost Approach, as required.[39] The purported Sales Approach in the Ryan Materials was not valid because it included only one sale and there was no adjustment analysis.[40]

Finally, the Assessment Office argued that Forwood had no competent witness to testify. The Ryan witness (who was in attendance) did not have first-hand knowledge, and it was not permissible for the Taxpayer to rely exclusively on hearsay.[41]

Forwood responded:

To address the county's position, [Forwood] does not intend to rely on the analysis that was originally presented and attached to the appeals that were filed to the board.

That analysis prepared by Ryan LLC was intended to serve as a basis for further settlement discussions with the county assessment officer

---

[37] R. 4.
[38] R. 6-7.
[39] R. 8-9.
[40] R. 9.
[41] R. 8.

similar to cases that have been filed with the board over the course of many years by clients of Ryan LLC.[42]

Forwood explained that it engaged in settlement discussions with the Assessment Office over the course of a year. In those discussions, the Assessment Office advised that it was engaging its own appraiser, and that "[t]hey advised the [Taxpayers] that the report could serve as a basis on the county's end to resolve not only [the Forwood] case but resolve a number of cases."[43]

Forwood's counsel, now addressing all the Appeals, advised the Board that after a year of settlement discussions, the Assessment Office cut off the discussions, telling the Taxpayers in February 2023 that an appraisal report would be due in ten days.[44] Counsel argued that ten days was insufficient to prepare such reports, and since that time, an appraiser had been retained and two appraisal reports had been submitted.[45] Counsel requested that a merits hearing on the Appeals with appraisals (Market Street and King Street) and for the remaining Appeals, "a board vote approving an extension of time for [the Taxpayers] to prepare and submit appraisal reports."[46] Finally, counsel stated:

> I understand the board has local rules that require appraisal submissions in a year and that under board rules the board has the power and

---

[42] R. 11.
[43] R. 12.
[44] R. 13.
[45] R. 14.
[46] R. 13-14.

authority to extend that deadline at the request of the appellants, and I do request that you extend the deadline today.[47]

The Assessment Office objected to a further extension, arguing that Forwood had known since February that an appraisal was needed; it was granted two extensions and did not seek a further extension from the Board (as required by Art. VIII, § 5(a)) before the prior extensions lapsed;[48] and Forwood still had not submitted an appraisal.

The Taxpayers responded that they were now making a § 5(a) request (an appraisal continuance) to the Board.[49] The Taxpayers also argued that, while Board rules require an appraisal, 9 *Del. C.* § 8312 does not, and they should not be precluded from further developing their record through appraisal reports.[50] Finally, the Taxpayers argued that their due process rights, guaranteed by § 8312 and case law, would be violated if they were denied a merits hearing.[51]

The Board then engaged in a discussion with counsel. Commenting on the Taxpayers' argument that an appraisal is not required, a Board member stated:

> [The appeal form] specifically states that the documentation has to be provided and that an appraisal is required for this.

> But it's 2023 and [for Forwood] we still don't have an appraisal…. So I do believe that the filing is deficient based on that fact that insufficient information was provided from the get-go.

---

[47] R. 15.
[48] R. 15-19.
[49] R. 19.
[50] R. 20-21.
[51] R. 21-23.

14

And, … it's not that we discounted all of this, but, quite honestly, when I reviewed this for this hearing today I could make no sense of [the appeal] because it didn't have enough pertinent information for us to make a decision.

And for that reason and the reason that it doesn't fall within the guidelines of the board, I'm prepared to make a motion to say this is a deficient filing and that it should be denied at this time.[52]

The Board unanimously voted in favor of the motion and denied the Appeals.[53]

The Taxpayers then moved for a continuance under Art. VI, § 6(m).[54] They wanted to brief the novel legal issue of the applicability of the Court of Chancery's 2020 decision in *In re Delaware Public Schools Litig.*,[55] which found the county's tax assessment process unconstitutional.[56] Because the Appeals had already been denied, the Board construed this request as a motion for reconsideration, which it also denied.[57]

### 2. *The Various Appeals*

The Board next addressed the Various Appeals. The Assessment Office argued that these Taxpayers received deficiency notices in May, and for the same

---

[52] R. 27-28.
[53] R. 31, R. 36.
[54] Board Rules, Art. VI, § 6(m) provides, in relevant part, "Either appellant or Assessment may request an opportunity to brief any novel issue of law identified by the Board prior to Board voting to adopt any decision."
[55] 239 A.3d 451.
[56] R. 31-32.
[57] R. 33-36.

reasons in the Forwood Appeals, the Ryan Materials were insufficient. Further, no appraisals were provided, and the Taxpayers had no competent witness available to testify at the hearing.[58]

The Various Taxpayers, based on the arguments made for Forwood, requested a continuance under Art. VIII, § 5(a).[59]

A Board member noted that these Appeals had been pending since 2021 and 2022 and include the same type of materials as the Forwood Appeals. Referring to the Ryan Materials attached to these appeals, the member stated: "It's extremely difficult to get this much information and not have any information … And the way that it's come before us is that these files are deficient by the standards and rules that have been established by the board…."[60] The member then moved to deny the Various Appeals as deficient.[61] The Board unanimously voted in favor of the motion and denied the Appeals.[62]

### 3. *The Market Street Appeals*

The Assessment Office argued that Market Street received a deficiency notice in May and was given to June 13, 2023 to cure the deficiencies. The Market Street Appeals were filed in March 2021 and 2022, but the appraisal was not submitted

---

[58] R. 42-44.
[59] R. 44-45.
[60] R. 46-47.
[61] R. 47-50.
[62] R. 73.

until July 19, 2023. It was untimely because it was submitted after the cure period and more than a year after the Market Street Appeals were filed, without Board approval.[63]

Market Street thus requested an extension of time so that the appraisal report would be deemed timely submitted, noting that the appraiser was present to testify.[64]

On questioning from the Board, Mr. Hardman testified that after the May deficiency letter, there were no communications with Market Street about submitting an appraisal report.[65]

Also on questioning from the Board, Doug Nickel, who prepared the appraisal report, testified that he could not recall when he was engaged to perform the appraisal, but that it took him approximately six weeks to three months to complete.[66]

A Board member noted that the Market Street Appeals were filed in March 2022, and it had a year to submit an appraisal report.[67] She stated the appeal was "a deficient filing in that it wasn't filed properly from the get-go and it's been over a year and a half to make this correction."[68] Another Board member noted that Market

---

[63] R. 75-76.
[64] R. 76.
[65] R. 87.
[66] R. 95.
[67] R. 88-89.
[68] R. 89.

Street had until June 13, 2023 to cure the deficiencies, and it did not do so until a month later.[69] A Board member made the following motion:

> I move to deny the appeal based upon the fact that there is – the appraisal was not received within the allotted time and the original appeal was deficient from the date it was submitted, and as a result I say that we are denying the appeal because it was deficient.
>
> [And] that the deficiency was not corrected by the date of June the 13th, which is what the county was looking for. Instead, the appraisal … is dated July 17th, … and then finally submitted to New Castle County on July 19th.[70]

After receiving the May deficiency letter, Market Street never told Mr. Hardman that an appraisal report was in progress.[71]

The Board unanimously voted in favor of the motion and denied the Appeals.[72]

### 4. *The King Street Appeals*

Finally, the Board addressed the King Street Appeals. Each side incorporated their arguments from the previous Appeals and noted that the appraisal for King Street was submitted on September 22, 2023.[73] A substantially similar motion to

---

[69] R. 90.

[70] R. 92-93.

[71] R. 97. Counsel for Market Street incorporated his prior arguments into the record for these appeals. R. 99.

[72] R. 101-02, R. 503.

[73] R. 102-03.

that of  Market Street was made, and the Board unanimously voted in favor and denied the Appeals.[74]

## III.     *The Board's Decisions*

The Board issued a written decision for each group of Appeals on October 24, 2023.  The decisions summarized the procedural and factual background of the Appeals, as detailed above.  Each decision memorialized the Board's ruling that the Appeals were deficient, and the Taxpayers had not provided competent evidence of substantial overvaluation.  Therefore, the Board denied the Appeals.[75]

## IV.     *The Parties' Contentions*

The Taxpayers make three arguments on appeal: (1) the Board violated their due process rights by dismissing the Appeals without a merits hearing; (2) the use of a 1983 tax base year is unconstitutional, and the Taxpayers should not be forced to submit evidence that violates state law; and (3) the Assessment Office was conflicted because it defended its assessment at the Board level, while at the same time acting as a Board advisor on the deficiency, thus invalidating the whole process.

The Assessment Office asserts that the Taxpayers cannot now argue that the Ryan Materials are competent evidence because they admitted that they never intended to rely on the materials.  The Taxpayers are precluded from arguing the

---

[74] R. 106-07.
[75] R. 172-76, R. 502-05, R. 988-93, R. 1102-09.

legal issue because it was not properly raised below. And, finally, the Appeals were deficient because of the *Taxpayers'* choices, despite the Taxpayers' attempt to blame the Assessment Office and the Board.

## V. *Standard of Review*

A taxpayer may appeal a tax assessment to the Board.[76] The Board "shall sit and hear all appeals properly filed and shall permit the introduction of all relevant evidence, including the testimony of witnesses…."[77] The taxpayer bears a "substantial evidentiary burden."[78] At the Board level, the taxpayer must overcome "the presumption of accuracy in favor of the existing assessment."[79]

A taxpayer dissatisfied with the Board's decision may appeal to the Superior Court.[80] The Board's decision "shall be prima facie correct and the burden of proof shall be on the appellant to show that the [Board] acted contrary to law, fraudulently, arbitrarily or capriciously."[81]

---

[76] 9 *Del. C.* § 8311(a) (The taxpayer may file an appeal "on such forms as the Board may prescribe" "setting forth the assessment … appealed from, the name and address to which the Board shall mail notice of the time and place of hearing, and such other information as the Board may require. The Board … shall hold hearings on a schedule and in the manner determined by it to be the most appropriate and efficient to handle all appeals in a timely manner.").

[77] 9 *Del. C.* § 8312(b).

[78] *Seaford Assocs.,* 539 A.2d at 1047.

[79] *Id.*

[80] 9 *Del. C.* § 8312(c).

[81] *Id.*

This Court's review is limited. It does not weigh evidence, make credibility determinations, or make its own factual findings.[82] This Court may "affirm, reverse or modify" the Board's decision or "remand the matter to the [B]oard to clarify issues of fact or to make findings consistent with the Court's decision."[83] This Court will reverse if "the Board's findings are clearly wrong and its conclusions not the product of an orderly and logical deductive process."[84]

The Court applies an abuse of discretion standard to the Board's denial of a continuance request.[85]

## VI.     *Discussion*

### A.     *Were the Appeals deficient?*

#### 1.     *Relevant Board Rules*

##### a.     *Hearings and continuances*

The Board meets three days during the months of January, April, July, and October.[86] An appeal is made by filing written notice "with the Board on such forms

---

[82] *Angelo v. New Castle Cnty. Bd. of Assessment Rev.*, 2017 WL 6343554, at *2 (Del. Super. Dec. 11, 2017) (citing *Brandywine Innkeepers, LLC v. Bd. of Assessment Rev. of New Castle Cnty.*, 2005 WL 1952879, at *3 (Del. Super. June 3, 2005)).

[83] 9 *Del. C.* § 8312(c).

[84] *Tatten Partners, L.P. v. New Castle Cnty. Bd. of Assessment Rev.*, 642 A.2d 1251, 1256 (Del. Super. Oct. 19, 1993) (citation omitted).

[85] *Reybold Venture Grp. V-A, LLC v. New Castle Cnty. Off. of Assessment*, 2018 WL 3159234, at *6 (Del. Super. June 27, 2018) (citing *In re Gresick*, 1988 WL 116411, at *8 (Del. Super. Nov. 2, 1988)).

[86] Board Rules, Art. VI, § 1.

as the Board may prescribe,"[87] and the taxpayer will be notified at least 30 days in advance of a scheduled hearing.[88]  At the hearing,

> (c) The [taxpayer] shall present testimony, including any legally admissible documentation or other evidence, in support of a lower assessment, ***so long as such evidence was disclosed in the [taxpayer's] appeal form or any supplement thereto provided to Assessment and the Board no fewer than 21 days prior to the hearing***. The Board shall not consider evidence that is not disclosed in the appellant's appeal form or any timely supplement thereto.[89]

Under Art. VI, § 7(b), a timely request for an administrative continuance "shall" be granted.  However, only one continuance is permitted under this section.[90] Otherwise, a request for continuance must comply with § 7(c), which requires a showing of "extraordinary circumstances beyond the taxpayer's control that resulted in the need for a continuance."[91]  Finally, a taxpayer may seek a continuance at a hearing "for cause."[92]

### b.      *Data requirements and deficiencies*

If the Assessment Office believes an appeal is deficient "in that it does not contain competent evidence of substantial overvaluation," the Assessment Office "shall" advise the taxpayer and provide ten days for the taxpayer to cure the

---

[87] Board Rules, Art. VI, § 4; 9 *Del. C.* § 8311(a).
[88] Board Rules, Art. VI, § 5(a).
[89] Board Rules, Art. VI, § 6(c) (emphasis added).
[90] Board Rules, Art. VI, § 7(b).
[91] Board Rules, Art. VI, § 7(c).
[92] Board Rules, Art. VI, § 7(f).

deficiency.[93]  If the deficiency is not cured, the Assessment Office "shall present" the appeal to the Chairperson for a designation as a "deficient filing."[94]  "If the Chairperson agrees that the appeal is deficient, the appeal will be scheduled for a hearing solely for the Board to vote on whether the appeal should be dismissed as deficient."[95]  If the Board votes that an appeal is deficient, "the appeal shall be denied."[96]

An appeal may not be designated as deficient if it is "supported by an opinion providing a 1983 value that has been prepared by an appraiser licensed or permitted to practice in the State of Delaware by the State Council on Real Estate Appraisers."[97]

### c.  *Evidence of assessed value*

The appeal form expressly states that all substantiating material must be attached.  An appraisal must be prepared by a licensed or certified appraiser, who must testify at the hearing.[98]

---

[93] Board Rules, Art. VIII, § 2.
[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] *Id.*
[98] Board Rules, Art. VIII, § 3(c), § 5(c).  Residential property owners are not required to submit an appraisal. *See* Art. VI, § 8 (allotting 15 minutes for residential tax appeal hearing when neither side is presenting an appraisal).

Extensions of time to submit an appraisal are governed by Art. VIII, § 5(a). An extension may be granted upon a showing of "good cause."[99]  Upon an additional extension request, the Chairperson may grant the extension or direct that the appeal be set for a deficiency hearing.[100]  However, the Chairperson "shall" not extend the time for filing an appraisal "more than one (1) year after the application date without a vote of a majority of the members of the Board approving such extension."[101]

### 2.  *Are the Taxpayers entitled to a merits hearing?*

The Taxpayers argue that they have a statutory right to a "full and fair hearing."  They correctly assert that the Board is mandated by 9 *Del. C.* § 8312(b) to permit the introduction of "relevant evidence."  The Taxpayers argue that the Board was required to hold a merits hearing because each Appeal included competent evidence of substantial overvaluation: the Ryan Materials.[102]

"Competent evidence" is "proof of value by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court…."[103]  "If a taxpayer presents evidence of substantial

---

[99] Board Rules, Art. VIII, § 5(a).
[100] *Id.*
[101] *Id.*
[102] Opening Brief of Appellant Taxpayers, (D.I. 19) ("OB"), p. 11.
[103] *New Castle Cnty. Dep't of Fin. v. Tchrs. Ins. & Annuity Ass'n*, 669 A.2d 100, 103 (Del. 1995) (citation omitted); *see also* appeal form. R. 178.

overvaluation, based upon a valuation technique generally acceptable in the financial community, the Board should hear the entire appeal."[104]

The Taxpayers argue that the February and May deficiency letters misstated the facts and the law. The Ryan Materials do not purport to be appraisals, thus rendering grounds (1) and (2) of the deficiency letters factually incorrect. Further, ground (3) (the Appeals did not include any "admissible evidence supporting the appeal[s]") is legally incorrect because evidence before the Board need not rise to the level of "admissible" evidence, but must only be "relevant."

As the Taxpayers argue, § 8312 provides that the Board "shall" sit and hear properly filed appeals and "shall" permit "relevant evidence" to be introduced. They assert that they are entitled to a merits hearing because the Ryan Materials were "relevant evidence."

The right to a hearing, however, is not unconditional.[105] Section 8312 must be read in conjunction with 9 *Del. C.* § 1371B, which authorizes the Board to "[p]repare such rules and regulations for its operation as it deems appropriate."[106]

---

[104] *Tchrs. Ins. & Annuity Ass'n*, 669 A.2d at 103.

[105] *Kimberton Apartment Ass'n, L.P. v. New Castle Cnty. Bd. of Assessment Rev.*, 1992 WL 1485434, at *3 (Del. Super. Mar. 6, 1992).

[106] Prior to the redesignation to § 1371B, effective September 19, 2024, the Board's authorization to implement rules was found in § 1318. *See also Western Gateway Assocs., L.P. v. New Castle Cnty. Bd. of Assessment Rev.*, 1986 WL 11538, at *2 (Del. Super. Sept. 26, 1986) (in 1986, the Board's authorization was found in § 1305); *SU-BE, LLC v. New Castle Cnty. Dep't of Land Use*, 2024 WL 3070003, at *4 (Del. Super. June 20, 2024).

25

The Board adopted rules, the purpose of which "is to fairly and efficiently administer the appeals process,"[107] governing what information must be provided with the appeal form. The form expressly requires the appellant to attach "[a]ll material substantiating" the taxpayer's reasoning, such as appraisal reports.[108] The Board-approved appeal form also expressly provides that the supporting data must be "competent evidence," which is defined as evidence "founded on an approach to valuation generally accepted in the financial community."[109] Thus, the taxpayer must "comply with the procedural requirements established by the Board."[110]

At the October hearing, the Taxpayers addressed the deficiency of the Ryan Materials. Instead of defending the materials as "competent evidence," the Taxpayers told the Board that they never intended to rely on the Ryan Materials at a merits hearing.[111] Instead, the Ryan Materials were a compilation of information submitted to the Assessment Office for purposes of engaging in settlement discussions.[112]

On appeal to this Court, the Taxpayers reverse course and argue that they are entitled to a merits hearing on the Ryan Materials. Other than asserting that they checked the Sales Approach and Income Approach boxes on the appeal form, the

---

[107] *SU-BE*, 2024 WL 3070003, at *5.
[108] *See* R. 177.
[109] *See* R. 178.
[110] *Kimberton* , 1992 WL 1485434, at *3.
[111] R. 11.
[112] *Id*.

26

Taxpayers make no attempt to show that the Ryan Material used a technique that is generally accepted in the financial community (*i.e.*, "competent evidence").[113]

It is within the Board's authority to determine what information must be submitted with the appeal form.[114]  Accordingly, the appeal form clearly instructs that "all material" substantiating the taxpayer's valuation "<u>must</u> accompany this form."[115]  The form further instructs that the materials attached must be "competent evidence" and explains what constitutes competent evidence.[116]  When an appeal does not comply with the instructions, it is within the Board's authority to determine that the appeal is deficient.  Here, the Board determined that the Appeals were deficient because the Ryan Materials did not satisfy Board requirements.  Indeed, the Taxpayers acknowledged that they did not intend to rely on these materials.[117]

---

[113] The Taxpayers argue that neither the Assessment Office nor the Board attacked the actual income or sales data. OB, p. 16.  But the record reflects that the Assessment Office attacked  the Ryan Materials' failure to provide sales and income data, and the Board identified deficiencies as well. *See* R. 6-9, 28.

[114] *Nat'l Vulcanized Fibre Co. v. New Castle Cnty. Bd. of Assessment Rev.*, 1989 WL 5228, at *2 (Del. Super. Jan. 10, 1989) ("It is the Board's function, not [Superior] Court's, to determine what information is required to be submitted with the appeal form."); *Kimberton*, 1992 WL 1485434, at *3 ("This Court has recognized that it is the function of the Board, not the Court, to determine what information must be submitted with the appeal form.").

[115] R. 177 (emphasis in original).

[116] The Taxpayers are correct that evidence before the Board need not rise to the level of admissibility as would be required in court. *See, Pany of Delaware, Inc. v. Carroll*, 316 A.2d 562, 564 (Del. Super. 1972) (the rules of evidence do not strictly apply to administrative proceedings). While the deficiency letters refer to admissible evidence, it is clear from the October hearing transcript that the Board's decision was based on the lack of competent evidence supporting the Appeals, rather than an "admissibility" standard.

[117] R. 11.

As such, the Taxpayers cannot now argue that the Ryan Materials are competent evidence.[118]

The Taxpayers also argue that after supplementing some of the Appeals in March 2022, the Assessment Office did not further advise the Taxpayers' that their Sales Approach and Income Approach were deficient. Rather, the Assessment Office "promised to evaluate the information and obtain Assessment's own appraisal for further discussions and potential resolution."[119] Suggesting that they were misled, the Taxpayers claim that after two years, the Assessment Office "suddenly cut off" settlement discussions and "blindsided" them, declaring the Appeals deficient, giving only ten days to cure.[120]

The record does not support this argument. First, the Assessment Office *did* review the Appeals and *did* issue deficiency notices. Second, the Taxpayers knew the Ryan Materials were not sufficient and never told the Assessment Office that they intended to obtain an appraisal until *after* deficiency notices were issued.[121] Third, the Assessment Office obtaining an appraisal for one property was not a "promise" to the Taxpayers. Simply because the Assessment Office had intended to

---

[118] *See Tatten Partners,* 642 A.2d at 1262 ("…when this Court acts in its appellate capacity on an appeal from an administrative board, the Court will not consider issues not raised before the [lower] tribunal.").
[119] OB, p. 15.
[120] OB, p. 15-16.
[121] R. 97.

obtain an appraisal, the Taxpayers were not relieved of the obligation to timely submit competent evidence of substantial overvaluation.

The Board's finding that the Ryan Materials were not competent evidence is supported by the record. Accordingly, the Taxpayers are not entitled to a merits hearing.[122]

### 3. *Were appraisals required?*

The Taxpayers argue that neither the appeal form nor Board rules require submission of an appraisal report with the appeal form. So, the Board's finding that the Appeals were deficient from the "get-go" because they did not include an appraisal, was arbitrary and capricious.

The appeal form makes clear that ***all supporting material*** must be attached. This includes, for example, sales history, analysis of comparable properties, ***an***

---

[122] The cases the Taxpayers rely on are distinguishable. *Reybold Venture Grp. V-A, LLC*, 2018 WL 3159234 (the Board abused its discretion when it denied the taxpayer's request for a continuance made after the county offered a new valuation during the hearing); *Delaware Racing Ass'n v. McMahon*, 340 A.2d 837 (Del. 1975) (the county was not permitted to assert the taxpayer's evidence was "not competent" after the Board admitted the evidence without reservation, implying that it was competent evidence); *Seaford Assocs.*, 539 A.2d 1045 (while it is preferable to use all three acceptable approaches to the extent the specific circumstances permit, use of the income approach coupled with another valuation method cannot be ignored by the Board simply because the Board would have preferred to have the cost method used); *Kimberton*, 1992 WL 1485434 (taxpayer was entitled to a merits hearing where the taxpayer filed an appeal supported by competent evidence of substantial overvaluation and supplemented the appeal with a full report within the time specified in a deficiency notice). None of these cases stand for the proposition that a taxpayer who checks the boxes on the appeal form, but does not provide any competent evidence, is entitled to a merits hearing.

***appraisal report***, and income and expense data.[123]  And, a taxpayer is on notice that the submission without an appraisal is subject to a deficiency review.[124]

If a taxpayer intends to rely on an appraisal, but the report is not submitted with the appeal form, the Board rules provide a process for submitting a report.  First, the appraisal may be submitted in the ten-day cure period after receipt of a deficiency notice.[125]

Second, under Art. VIII, § 5, the Chairperson is authorized to grant an extension to submit an appraisal upon a showing of "good cause."  If the taxpayer does not submit the report in the time provided by the Chairperson, the Chairperson may grant an additional extension or have the appeal set for a hearing.[126]  However, the Chairperson may not extend the time beyond one year after the appeal is filed "without a vote of a majority of the members of the Board authorizing such extension."[127]

Reading these Rules together, if a taxpayer intends to rely on an appraisal, the form requires the appraisal to be filed with the appeal form.  If the taxpayer does not,

___

[123] *See* R. 177.

[124] Board Rules, Art. VIII, § 2 ("Assessment shall not designate as deficient any appeal supported by an opinion providing a 1983 value that has been prepared by an appraiser licensed or permitted to practice in the State of Delaware…").

[125] *Id.*

[126] Board Rules, Art. VIII, § 5(a).

[127] *Id.*  A continuance is also available upon a showing of "extraordinary circumstances beyond the appellant's control that resulted in their need for a continuance."  Board Rules, Art. VI, § 7(c). The Taxpayers never attempted to make such a showing.

it is incumbent upon the taxpayer to seek a continuance as provided in the rules. Here, the Taxpayers did not do so. The Appeals were submitted without an appraisal, and none were submitted in the cure period. Only Forwood made a § 5(a) appraisal continuance request, but it never submitted an appraisal.

The Taxpayers further argue that the deadline for submitting an appraisal report is 21 days before a merits hearing, and because a merits hearing has not been scheduled, the deadline to submit an appraisal has not passed. Therefore, the Board's ruling was arbitrary and capricious.

The Taxpayers base this argument on Board rule Art. VI, § 6(c), which provides:

> The appellant shall present testimony, including any legally admissible documentation or other evidence, in support of a lower assessment, so long as such evidence was disclosed in the appellant's appeal form or any supplement thereto provided to Assessment and the Board *no fewer than 21 days prior to the hearing*. The Board shall not consider evidence that is not disclosed in the appellant's appeal form or any timely supplement thereto. (emphasis added).

Reading the Board rules as a whole, the Taxpayers' interpretation is unavailing. First, the Taxpayers' theory would essentially prevent any appeals from being dismissed as deficient. A taxpayer "shall" be notified of a hearing no later than 30 days before the scheduled merits hearing.[128] With the appraisal deadline after the notice deadline, an appeal must be set for a merits hearing to trigger the

---

[128] Board Rules, Art. VI, § 5(a).

31

appraisal deadline. Therefore, a taxpayer could file an appeal form with no supporting information (in violation of Board rules), not cure the deficiency in the cure period, and simply submit an appraisal report 21 days before a hearing. This would make the filing requirements and the deficiency notice process meaningless. The Board was established to provide a fair and efficient method to address assessment appeals. Requiring all appeals be scheduled for a merits hearing, no matter how deficient, is unreasonable.

Second, the Taxpayers' interpretation is inconsistent with the hearing process and the other tasks that must be completed 21 days before the hearing.

- Because the taxpayer has the burden of proof on appeal, it presents its case first.[129] If the Assessment Office intends to rely on an appraisal, it must produce its report at least 21 days before the hearing.[130] The Assessment Office could not determine whether to obtain a rebuttal appraisal report if the taxpayer's report was due the same day.

- The taxpayer is permitted to "supplement" its filing until 21 days before the hearing, to identify any "relevant factors" affecting the value of the property.[131] Thus, the supplementation is for a limited purpose.

---

[129] Board Rules, Art. VI, § 6(c), (d).
[130] Board Rules, Art. VI, § 5(b).
[131] Board Rules, Art. VIII, § 3(b) (emphasis added).

- Other tasks that are required to be completed 21 days before the hearing are administrative, such as: (i) the Assessment Office identifying its witnesses; (ii) the Assessment Office identifying its exhibits;[132] and (iii) applications for non-Delaware attorneys to appear at the hearing.

With this context, Taxpayers reliance on Art. VI, § 6(c) is misplaced. The reference to *supplementing* does not include submitting an appraisal report.

### 4. *Was the Board's denial of the continuance requests an abuse of discretion?*

The Board-approved appeal form requires the taxpayer to attach all material it intends to rely upon to show substantial overvaluation. Under Art. VIII, § 5(a), if a taxpayer needs additional time to submit an appraisal report, a taxpayer may make a request to the Board Chairperson. The Chairperson may approve the request or set the appeal for a deficiency hearing. A continuance beyond one year after the appeal is filed can only be approved by a Board vote.[133]

The Taxpayers were put on notice of the Appeals' deficiencies, starting with Forwood in February 2023.[134] Forwood was given ten days to cure the deficiency,

---

[132] Board Rules, Art. VIII, § 7(a), (b).
[133] Board Rules, Art. VIII, § 5(a).
[134] The Taxpayers' argument that the deficiency letters did not put them on notice that the Ryan Materials were deficient (Joint Reply Brief of Appellant Taxpayers (D.I. 25) ("RB"), p. 4) is also belied by the record. When Ryan received the first deficiency letter, it asked the Assessment Office if it "is your plan for us to be able to amend our prior administrative filings (or to supplement future court filings) with own third-party appraisal?". R. 1076. Additionally, at the October hearing, counsel for the Taxpayers stated: "I know the Board rules require an appraisal." R. 14.

33

and a merits hearing was scheduled for April 2023.[135]  Forwood requested a continuance to allow time to submit an appraisal report, which the Board granted.[136] Forwood never submitted an appraisal report.

The remaining Taxpayers received deficiency notices in May, with ten days to cure.[137]  None submitted an appraisal in the cure period, and none of these Taxpayers requested a continuance under Art. VIII, § 5(a).

In advance of the July hearing, the Taxpayers requested an administrative continuance under Art. VI, § 7(b).[138]  This is essentially an automatic extension, not requiring a reason for the request.

At the October hearing, the Taxpayers requested an appraisal extension/continuance under Art. VIII, § 5(a).  The Board noted that most of the Appeals had been pending for a year or more and no attempt was made to submit appraisals.[139]  The Board exercised its discretion and denied the continuance requests.

---

[135] R. 1078.

[136] R. 990.

[137] The Taxpayers' argument that "no reasonable taxpayer" would understand that the deficiency notice meant an appraisal was required is not supported by the record.  The Taxpayers acknowledged at the October hearing that they knew the Board requires an appraisal report.  R. 14; *see also* R. 1076 (Ryan asking if they will have additional time to submit an appraisal report).

[138] *See* R. 1097, R. 2333.

[139] King Street argues that its latest appeal was filed in 2023 (RB, p. 9) and therefore, the appraisal report was submitted in less than a year after the appeal was filed.  However, King Street did not follow the Board's rules on requests for an extension or cure the Appeal's deficiency within the cure period.

The Taxpayers acknowledge the Board requires an appraisal, yet did not file a report or timely seek an appropriate extension. The Market Street and King Street appraisal reports were not submitted within the cure period. These Taxpayers did not seek a continuance of the July hearing under Art. VIII, § 5(a) (appraisal continuance) but rather under Art. VI, § 7(b) (administrative continuance).[140] The Board's decision denying a further appraisal request was not an abuse of discretion.

## B.   *Are the Board Rules unenforceable against the Taxpayers?*

The Taxpayers argue that Board rules requiring them to use a 1983 valuation violates 9 *Del. C.* § 8306(a), known as the "True Value Statute," which provides that "[a]ll property subject to assessment shall be assessed at its present fair market value." The Court of Chancery ruled in *In re Delaware Public Sch. Litig.* that New Castle County violated the statute by applying 1983 values.[141] The Taxpayers therefore conclude that "imposing those rules on [the] Taxpayers is improper and unenforceable."[142]

The Taxpayers did not raise this issue until the October hearing. They requested leave to file briefs, which the Board denied. The Taxpayers do not argue that Board's ruling was wrong.[143] However, it appears that the Taxpayers are asking

---

[140] An administrative continuance is not "cause-based," and a timely request must be granted.
[141] OB, p. 27.
[142] OB, p. 28.
[143] The Taxpayers' request for additional time to brief the True Value Statute "is not at issue in this appeal." RB, p. 21, n. 5.

this Court to find that the Board rules requiring the use of 1983 values are unenforceable. To the extent that this is the Taxpayers' request, it is denied.

First, this argument was not raised below.

Second, the Taxpayers provide no support for the relief they seek.

Third, the requested relief is inconsistent with the ruling in *In re Delaware Public Sch. Litig.*[144] While the Court of Chancery declared the county's method of assessing property taxes violated the True Value Statute, that decision did not address a remedy. The Court of Chancery expressly provided time for the parties to negotiate a resolution, which they did. In 2021, the Court of Chancery entered an Order approving the process for the remedy of a re-assessment, which was expected to be completed by 2024.[145] The Court of Chancery did not invalidate any tax assessment based on the 1983 valuations. The Taxpayers provide no reason why they should be treated differently than taxpayers who were assessed in 2021, 2022, and 2023 based on 1983 values.

## C. *Did the Assessment Office taint the Board proceedings?*

The Taxpayers argue that the Assessment Office was their adversary regarding the assessed value, but then acted as the Board's advisor in determining whether the Appeals were deficient. According to the Taxpayers, Art. VIII, § 2 on

---

[144] *In re Delaware Public Sch. Litig.*, 239 A.3d 451.
[145] *In re Delaware Public Sch. Litig.*, 2021 WL 274765 (Del. Ch. Jan. 26, 2021). The County continues to provide updates to the Court of Chancery.

deficiencies permits the Assessment Office to communicate *ex parte* with the Board and convince the Chairperson that dismissal of an appeal is warranted. This, they assert, violates their due process rights.

As the Assessment Office points out, the Taxpayers did not raise this issue at the Board level.[146] The Taxpayers ignore this argument in their reply brief.

Because this argument was not raised below, the Taxpayers are precluded from raising it on appeal in this Court.[147]

## VI.     Conclusion

The Taxpayers failed to show that the Board's decisions were arbitrary and capricious or an abuse of discretion. The decisions are AFFIRMED.

**IT IS SO ORDERED.**

*/s/Kathleen M. Miller*
Kathleen M. Miller, Judge

---

[146] Answering Brief of Appellee New Castle County Assessment Division (D.I. 22), p. 30.
[147] *See Tatten Partners*, 642 A.2d at 1262.